Matthews, &c., v. Lloyd, Trustee, &c.

CASE 93—PETITION EQUITY—FEBRUARY 27.

# Matthews, &c., v. Lloyd, Trustee, &c.

APPEAL FROM CAMPBELL CHANCERY COURT.

1. CONFLICT OF LAWS—CREDITOR PREFERRED BY DEBTOR IN ANOTHER STATE.—At common law, a debtor had a right to prefer a creditor, either by a payment, or by an express preference in a deed of assignment. And, in the absence of any showing of the existence of a statute in another State forbidding such a preference, it must be presumed that the common law is in force there.

2. SAME.—Although by the statutes of this State, a preference by an insolvent debtor of one creditor, to the exclusion of others, is dedeclared to operate as an assignment for the benefit of creditors generally, provided it is attacked in the time and manner provided by the statute; yet such a preference, made in another State by a debtor residing there, will be upheld by the courts of this State, provided it is valid under the laws of the State where it was made; and there is nothing to show that any citizen of this State will be prejudiced by the preference.

3. FOREIGN ASSIGNMENTS FOR CREDITORS.—If an assignment made in another State be contrary to the law or the settled policy of this State, it will not be enforced here to the prejudice of our own citizen creditors.

4. PARTIES TO ACTION.—In a contest between a preferred creditor and a trustee for creditors generally as to the ownership of property transferred by the debtor to the favored creditor prior to the general assignment, the debtor is not a necessary party.

5. PLEADING—AFFIRMATIVE ALLEGATIONS.—An averment in a reply that a transfer was fraudulent must be regarded as merely a denial of an averment in the answer that the transfer was bona fide, and

Vol. 89—40

upon sufficient consideration; and, therefore, the allegation of fraud was not admitted by a failure to deny it.

JOHN S. DUCKER for appellants.

1. An assignee for creditors succeeds only to the rights of the assignor; and, as the assignor could not maintain this action, the assignee can not do so. (Burrill on Assignments, 3d ed., sec. 391; Maiders v. Culver's Assignee, 1 Duv., 165; Brownell v. Curtis, 10 Paige, 210.)

2. The presumption is, nothing appearing to the contrary, that the common law rule prevails in the State of Ohio, where the transaction between these parties took place. (Honore v. Hutchings, 8 Bush, 688.)

Besides, it is, in effect, admitted by the pleadings that, by the laws of Ohio, an insolvent has the right to prefer his creditor at any time before the deed of assignment.

C. L. RAISON, Jr., and HARLAN P. LLOYD for appellee.

1. If appellant had any cause of action, E. L. Harper was a necessary party to her case.

2. Our courts will enforce a transaction between parties in another State, if the transaction was legal in the State where it took place, provided the same is not prohibited by our own laws, and does not contravene the well-established public policy of our own State; but the alleged transfer in the case at bar is not valid, under the laws of either Ohio or Kentucky. (Revised Statutes of Ohio, secs. 4196, 6343; Gen Stats. of Ky., chap. 44, art. 1, sec. 1.)

While there are certain circumstances under which a preference may be given in Ohio, they do not exist in this case.

3. The assignee had the right to maintain this action; but if not, the question was not made in the lower court, and it is now too late to make it.

JUDGE HOLT delivered the opinion of the court.

June 21, 1887, E. L. Harper made an assignment for the benefit of his creditors. A few hours before doing so he directed the brother of the appellant, Hattie A. Matthews, to get John Otten to go to an officer of the Fidelity Loan Company, and get from him his (Harper's) "pass-book," evidencing his ownership of twenty shares of stock in the company, then worth from four to five thousand dollars, and draw the value

of it by a withdrawal from the company, and pay it over to the appellant, Hattie A. Matthews. Otten got the pass-book, but found he could not draw the money without an assignment of the stock from Harper. He was selected to do so because it was supposed that his relations with the company would enable him to readily get the money. Not succeeding, he took the pass-book to the brother, who filled up an assignment of the stock upon a leaf of it, in Otten's name, and procured Harper to sign it. It was then delivered to her brother for the appellant, Hattie A. Matthews. He then gave it to Otten, in order that he might draw the value of it from the company and pay it to her. The company declined, however, to comply with the request, as when it was made Harper had made the assignment for the benefit of his creditors. The transfer of the stock did not show that it was for the benefit of Hattie A. Matthews, but this was the understanding, at the time, of all the parties, as is indisputably shown by the evidence. It, aside from that of the appellant, Hattie A. Matthews, and Harper's wife, whose testimony was objected to because he was then in the penitentiary, and one of them was his wife, also shows that at the time of the transfer he was indebted to the appellant, Matthews, in a sum greater than the value of the stock, and that it was made by way of part payment. It is, therefore, unnecessary to determine the competency of the appellant and Harper's wife as witnesses, or whether any portion of their testimony is competent.

It appears that the appellant received from her

father's estate, in 1880, about one thousand dollars. She then resided with Harper, who was her brother-in-law, and continued to do so up to the time of his failure, and perhaps longer. She turned the money over to him for investment. He was then a wealthy man, and continued to be so regarded until shortly before his failure. He was utterly wrecked financially, and became an inmate of a prison through reckless speculation, which, *ignis fatuus*-like, led him on even to the commission of crime. The investment for her by him resulted in great gain in a short time, and in settlement of what was coming to her through it, he, on August 8, 1881, executed to her his note for five thousand dollars, no part of which had been paid at the time of his failure, save the interest to January 1, 1882. June 24, 1887, certain of his creditors sued out attachments in the Campbell Chancery Court, and attached the interest in the Loan Company that had been transferred to the appellant, but in the name of Otten, for the purpose of collection for her. September 16, 1887, she, by answer and cross-petition against the trustee of Harper under the deed of assignment, became a party to the consolidated suits of these creditors. She claimed the stock, her pleading setting forth the grounds of her claim, and Otten joining with her in it. January 4, 1888, the trustee, in answer to her cross-action, set up a claim to the stock under the deed of assignment.

The creditors are not parties to this appeal, nor are their pleadings made a part of the record before us. In the consideration of the matters involved, we will

waive the question of the right of the trustee to assert in a suit a claim to the stock, when the assignor in the voluntary assignment could not do so.

The evidence fails to show that the appellant's debt was a fraudulent one, nor is a state of circumstances shown from which we are authorized to presume it. This is also true as to her claim to the stock in the Loan Company, based upon the transfer in Otten's name. No fraudulent purpose is shown even by inference. It was, however, undoubtedly intended as a preference of the appellant as a creditor by Harper as a debtor. Indeed, this is expressly admitted by her pleadings. The parties all resided in Ohio, and the entire transaction occurred there. Its validity is, therefore, to be tested by the law in force there. The deed of trust was also made there. At common law a debtor had a right to prefer a creditor either by a payment or an express preference in a deed of assignment. He has a right to pay his debt, and it is only by virtue of statutory law that such a payment can be held invalid, and the creditor be compelled to surrender his advantage. In the absence of any showing of the existence of such a statute in another State, it must be presumed that the common law is in force there. (Miles v. Collins, 1 Met., 308; Honore v. Hutchings, 8 Bush, 687.)

The appellee has, in his pleadings, set out a section of an Ohio statute, which reads thus: "All assignments in trust to a trustee or trustees, made in contemplation of insolvency, with the intent to prefer one or more creditors, shall inure to the equal benefit of all creditors in proportion to the amount of their

respective claims, and the trusts arising under the
same shall be administered in conformity to the pro-
visions of this chapter," and which he claims invali-
dates a preference like this one. We are unable to
judge of it by its title, and its other sections, as
the entire statute is not before us. It does not ap-
pear to us, however, to embrace a case like this one,
but to relate alone to preferences made in deeds of
assignment to trustees for creditors generally. Cer-
tainly, no such trust was created in the transfer of
the stock, as this statute contemplates. None was
intended. Otten was not named as trustee for the
appellant. He was but an agent to draw the value
of the stock for her, and then at once pay it over
to her. The preference was a *bona fide* one. It was
made by the assignment and delivery of the written
evidence of the ownership of the stock The prepon-
derance of the testimony shows that the transfer was
made in the morning, and the assignment not until the
evening of the same day. In any event, they were not
made, or even prepared, at the same time. It was
not one transaction, and the written transfer of the
stock and the assignment can not, upon the evidence,
be regarded as really constituting but one instrument.
If they could be, then the transfer of the stock would
perhaps fall within the interdiction of the statute as
being, in fact, a part of the deed of assignment. The
rules of the common law govern the transaction, and,
when so considered, it is not invalid, because a pay-
ment of a pre-existing debt in view of coming insol-
vency is not forbidden by them. It is urged that
such a preference is contrary to the statute of this

State, and will not, therefore, be upheld by its courts. It is true comity does not require one State to violate its own laws to enforce those of another. Such a preference is not fraudulent or void, however, under our statute. Upon the contrary, it operates as an assignment, not only of the particular property embraced by the preference, but of all the debtor owns for the payment of his debts *pro rata*, provided advantage be taken of it in the manner and within the time prescribed by the statute. It merely inures to the benefit of all the creditors, if they, or any of them, so ask in proper time and manner. It is a privilege given them. If an assignment, made in another State, and valid there, be contrary to the law or the settled policy of this State, it will not be enforced here to the prejudice of our own citizen creditors. It does not appear, however, that any citizen of this State will be prejudiced by the preference in question. The appellant may certainly come into court and assert her claim; she may sue; her adversary is a non-resident. It does not appear that any of the creditors are residents. If any presumption is to be indulged, it is that they are residents of Ohio, where this transaction occurred, because the deed of assignment was made there and the trustee resides there. No citizen of this State is questioning her right. Under this state of case, the appellant, inasmuch as the preference was valid where made, should not, in our opinion, be turned out of court. The appellee is not in a position to deny the right of the appellant to relief, because Harper was not before the court upon the cross-pleadings. She is

claiming to be the owner of the stock, and did become, at least, the equitable owner by the transfer to Otten, the legal title being in him. The appellee claims it under the deed of assignment to him. In any event, Harper is not the owner, and he was not, therefore, a necessary party to the contest over the ownership between these two claimants. He had parted with the right to it to one or the other of them beyond all question.

It is urged the second paragraph of the answer and reply of the trustee, in which it is averred, in affirmative form, that the transfer was made at the time Harper was contemplating an assignment, and that it was, therefore, fraudulent, and so in fact, is undenied, and that it must, therefore, be so held. Its averments must, however, be regarded as statements negativing those of the cross-petition of the appellant. It is therein averred that the transfer was *bona fide*, and upon sufficient consideration, and these averments of the answer and reply of the appellee are, in substance, but contradictory of them, although couched in affirmative language. The transfer was, in fact, made; it was not fraudulent, nor as a preference was it forbidden by the *lex loci*, and it must be upheld.

The judgment is reversed, with directions to render one for appellant in conformity to this opinion.