Bank of Commerce of Buffalo, N. Y., v. Windmuller, &c.   ·

CASE  46—ATTACKING  CONVEYANCE  AS  FRAUDULENT—
APRIL 20.

# Bank of Commerce of Buffalo, N. Y. v. Windmuller, Etc.

APPEAL FROM CARTER CIRCUIT COURT.

1. CONFLICT OF LAWS—COMMON LAW PRESUMED.—In the absence of allegation and proof to the contrary the common law will be presumed to be in force in New York.
2. PREFERENCES VALID AT COMMON LAW.—A transfer of property by an insolvent debtor in New York to a creditor in that State with the intent to prefer will be held valid in the absence of allegation and proof that the common law has been changed in that regard.
3. FRAUD.—The proof in this case fails to show actual fraud.

THOS. W. MITCHELL FOR APPELLANT.

1. When the bill of sale was made and delivered, its officers did not know nor had they reason to believe or even suspect that Brown was insolvent.
2. The bill of sale was made and accepted to secure a "liability contracted simultaneously therewith."
3. As plead and not denied, the written transfers were made, executed, delivered and accepted in the State of New York, of which State Brown was a resident and the appellant and the appellees Windmuller, National Park Bank, Mechanics and Traders Bank were citizens, and Gregory was then a citizen of Ohio.
4. The statutes of Kentucky, which appellees invoke, is not intended

Bank of Commerce of Buffalo, N. Y., v. Windmuller, &c.

to aid citizens and persons of other States in the settlement of their affairs and business transactions at home.

5. Even if it were true (which is denied) that Brown intended to prefer the appellant in past due indebtedness, it was done in New York, and the laws of that State recognize his right to do so. The common law prevails in that State, except in assignments for benefit of creditors, which are regulated by statute, and two-fifths is the limit of preference in such assignments.

6. Again, no judgment was rendered in favor of any appellees or any creditor and until some one has shown a right to recover, it is error to render judgment setting aside sales and conveyances and directing the master to hear proof and audit claims and make report of debts owing by Brown, when the record does not show that any creditor or alleged creditor other than appellees was asserting any claim or demand against him.

WILLIAM H. HOLT on same side.

1. The petitions of Windmuller, Mechanics & Traders Bank and the National Park Bank are not good in failing to charge that the bills of exchange sued on had been presented for payment at the proper time and place, and protest made and notice given of their non-payment.

2. By the laws of New York the transfer to the bank as a preference was permitted; preferences were not illegal at the common law and this court will presume that the common law is in force in New York. The act of 1856, making fraudulent preferences operate as an assignment, was intended to regulate transfers between citizens of Kentucky, and not between citizens of other States.

3. If Gregory was a citizen of this State, if he has a valid debt, then to the extent that the transfers may have been a preference, if at all, he would have been entitled to have it set aside, but as to him alone, there being no other Kentucky creditors. Matthews v. Lloyd, 89 Ky., 630; Merrifield v. Williams, 17 Ky. Law Rep., 8.

4 If it were true that all liens against the appellant bank were not only for a then consideration but to secure a pre-existing indebtedness and made in contemplation of insolvency and to prefer the bank, yet it would, of course, have a prior lien for the then consideration. Whittaker v. Garnet, 3 Bush., 411; Southwarth v. Casey, 78 Ky., 395; McCutchen v. Caldwell, 13 S. W. R., 1072; Siler v. Walz, ——.

Bank of Commerce of Buffalo, N. Y., v. Windmuller, &c.

H. D. GREGORY FOR THE APPELLEE.

1. The only questions to be determined in a final adjudication of this appeal are:  Whether the assignment and transfer made by Andrew Brown on August 19, 1889, of all his property to the appellant Bank of Commerce would, if made by a debtor of this State, be a preference by an insolvent debtor of one creditor to the exclusion of others, and could be declared under General Statutes, ch. 44, art. 2, sec. 1, in force at that time, to operate as an assignment for the benefit of the creditors generally. And if so, as it was made by an insolvent debtor residing in another State, will any citizen of this State be prejudiced by the preferences?  Gen. Stats., ch. 44, art. 2, sec. 1; Black's Law Dict., p. 263; O'Neil v. Miller, 2 Bush, 294; McKee v. Scobee, 80 Ky., 127; Terrill v. Jennings, 1 Met., 458; Matthews v. Lloyd, 89 Ky., 625; Anson Contracts (7th ed.), 73; King v. U. S., 27 Ct. Cl., 529; Guire v. O'Daniel, 1 Binney (Pa.), 349.

THOMAS D. THEOBALD FOR THE APPELLEE, MECHANICS & TRADERS BANK.

The property conveyed by Brown to the appellant was situated in Kentucky, a considerable portion of it real estate, and there were Kentucky creditors; so as to this property, the Kentucky statute against fraudulent preferences would be applicable. If not, however, the conveyance by Brown was actually fraudulent. O'Neil v. Miller, 2 Bush., 294; McKee v. Scobee, 80 Ky., 127; Terrill v. Jennings, 1 Met., 458; Matthews v. Lloyd, 89 Ky., 625.

D. K. WEIS AND R. D. DAVIS FOR THE APPELLEES, WINDMULLER AND THE NATIONAL PARK BANK.

1. It is a settled principle that every nation or State possesses exclusive sovereignty and jurisdiction within its own territory, and the laws of every State affect and bind directly all property whether personal or real.  Milne v. Moreton, 6 Burn, Pa., 361; Green v. Van Buskirk, 7 Wall. (U. S.), 151.

2. The title to property located in one State can not be passed by force of the laws of another, except by virtue of the comity which prevails among different nations and States, by force of international laws.   State Bank Receiver v. Plainfield Bank, 34 N. J. Rep., 450.

3. No State can, by its laws, directly affect, bind or regulate prop-

erty beyond its territory, or control persons who do not reside within it, whether they be native born subjects or not.

(a) There can be no pretense to say that any foreign nation has a right to require the full recognition and execution of its own laws, in other territories, when those laws are deemed oppressive or injurious to the rights and interests of the inhabitants of the latter.    Lane v. His Creditors, 17 Martin (La.), 599.

(b) The laws of a foreign State, where the parties are domiciled, will be respected by another jurisdiction, unless they be in conflict with the rights of its own citizens or are in opposition to its policy.    Shannon v. Judd, 3 Brad., 419.

(c) A statute law of another State will be enforced, if not against public policy, when such law has entered into a contract.    Banchor v. Gregory, 9 Mo. App., 102.

(d) A State, within whose territory personal property is situated, has entire domain over it.    Rice v. Harberson, 2 T. & C. (N. Y.), 4.

(e) One State can not dictate to another State how to construe a contract sought to be enforced within its limits.    A reasonable limitation of the rule of comity is, that no community shall suffer prejudice by its comity.    Lewe v. Woodfold, 58 Tenn., 25.

(f) Comity is the purely voluntary act of the nation or State, and is totally inadmissible when the laws of the foreign State or nation are contrary to its policy or prejudicial to its interests.    Miner v. Caldwell, 37 Mo. App., 350-354.

(g) Comity between different States does not require a law of one State to be executed in another where it would be against the public policy of the latter State.    Faulkner v. Hyman, 142 Mass., 53.

(h) No State is bound to give effect to the law of a foreign State when to do so will prejudice either the rights of its citizens or the interests of the State.    State Bank Receiver v. Plainfield Bank, 34 N. J., 450.

(i) No nation or State is bound to recognize or enforce contracts which are injurious to its interests, or welfare of its people, or which are in fraud or violation of its own laws, although valid by the law of the place where made.    Tyler v. Lord, N. H., 2 N. Eng. Rept., 286; Hill v. Spear, 50 N. H., 253; Smith v. Godpey, 28 N. H., 253; Pittsburg & St. L. R. R. Co. v. Rothschild, 4 Pa. Com. Rep., 109.

(j) No nation is bound to recognize or enforce contracts injurious to its own citizens.

(k) The enforcement by one nation of contracts made under the laws of another, rests on the principle of comity, and can not be so extended as to vitiate the positive legislation of the nation called on to enforce said contract. Ivey v. Lollard, 42 Miss., 444.

(l) It has been held by the Supreme Court of New Hampshire that no nation or State is bound to recognize or enforce contracts which are injurious to its interests or the welfare of its people, or which are in fraud or violation of its own laws. Fisher v. Lord, N. H., 2 N. Eng. Rep., 286.

(m) A contract, which though valid and would be enforced in the State where it was made, is in violation of a public law of another State will not be enforced on the ground of comity. Watson v. Murray, 8 C. Gr., N. J., 257.

(n) A transfer of personal property which is good by the law of the owner's domicil is valid wherever the property may be situated, unless the transfer be against the law or policy of the country where the property is situated. Frazier v. Frederick, 4 Zab., N. J., 162.

(o) An instrument, legal where made and at the domicil of the maker, and efficient to transfer his property there, can not dispose of his movables situated in another State, in a manner prohibited by the laws of the latter State inconsistent with its policy and declared to be fraudulent and void. Varum v. Comp., 1 C. E. Gr., N. J., 326.

(p) As to the nature and extent and utility of the recognition of foreign laws respecting the state and condition of persons and things, every nation must judge for itself, but, in no instance is required to recognize them when they would be prejudicial to its own interests or of its subjects. 2 Kent. Com., 457, 458.

(q) It has been said that the general doctrine that a defense or discharge, good by the law of the place of contract is good everywhere is subject to several qualifications, one of which is that the discharge or defense must not be of such character that to recognize it would be in conflict with the duty of the State where it is sought to be enforced toward its own citizens to enforce it.

(r) The laws of sovereignty have no extra-territorial vigor

and are enforced elsewhere, only upon consideration of comity, and these always yield to those higher considerations which demand of every State the protection of its own citizens against unwarranted acts of a foreign power. Gebhard v. Canada S. W. Ry. Co., 17 Blatchford, 66, 416.

(s) If an assignment made in another State and valid there be contrary to the law or settled policy of this State, it will not be enforced here, to the prejudice of our own citizen creditors. Matthews v. Lloyd, 11 Ky. Law Rep., 843.

(t) The principle of comity does not require the courts of one State to recognize and enforce to the prejudice of its own citizens assignments made by insolvent debtors under the laws of another State, but they will secure justice to domestic creditors without regard to the foreign law and assignment. Johnson v. Parker, 4 Bush, 149; 11 Ky. Law Rep., 843.

(u) A prior assignment in bankruptcy under a foreign law will not be permitted to prevail against a subsequent attachment by an American creditor of the bankrupt effects found here. Our courts will not subject our citizens to the inconvenience of seeking their dividends abroad when they have the means to satisfy them under their own control. 2 Kent. (2d ed.), 405, 406, 407; Harris & McHenry, Ind. Rep., 1 & 2 vol., 236 and 463; McNeil v. Colquehan, 2 Haywood, N. C., 24; Taylor v. Geary, Kirby Reps. Com., 313.

(v) Where the laws of two States are brought into conflict, the rule is that the law prevailing where the relief is sought must have the preference. Runyon v. Groshen, 1 Beasly, 86; Teheren v. Brentnall, 3 Harris (Del.), 262.

(w) The enforcement by one nation of contracts made under the laws of another rests on the principle of comity, which can not so far extend as to violate the positive legislation of the nation called on to enforce contracts, and in no case should it be carried to such an extent that the nation or its subjects will be in any way prejudiced thereby. Thrasher v. Everhart, 3 Gill & J., 234; Parnell v. Dwight, 2 Mass., 88; Kentucky v. Bradford, 6 Hill, 526.

4. The act of 1856 to prevent fraudulent assignments, in trust for creditors, does not render the sales, &c., void, but merely declares that they shall operate as an assignment and transfer of all the property and effects of the debtor and shall inure to the benefit of all his creditors. Given v. Gordon, 3 Met., 539.

5. A sale of property made by a debtor in contemplation of insolvency, and with the design to prefer some of his creditors, to the exclusion of others, operates of itself, as an assignment and transfer of all his property and effects for the benefit of all his creditors, and can not be defeated by some of the creditors suing out attachments subsequently, though before suit, under the statute by others.  Shouse v. Utterback, 2 Met., 53.

6. Where one creditor files his petition within the prescribed time to set aside a conveyance to preferred creditors, all other creditors have a right to file their claims subsequently, and become parties to the proceeding whilst pending, and after this has been done, the plaintiff can not dismiss his petition and thereby defeat their claims; nor can the court so defeat them by filing it away, never to be docketed again.  Sawyers v. Langsford, 5 Bush, 539.

7. Attaching creditors acquire no prior lien, by virtue of their attachments, when the property and effects of the debtor have inured to the benefit of his creditors, under the act of March 10, 1856.  Given v. Gordon, 3 Met., 539; Whittaker v. Garnett, 3 Bush, 410.

8. Under the act of 1856, to prevent fraudulent assignments, &c., a suit, by one creditor within the time prescribed if prosecuted to a successful termination, inures to the benefit of all creditors whether they sue or not.  Roberts v. Phillips, 11 Bush, 15.

WILLIAM H. HOLT FOR THE APPELLANT IN A PETITION FOR A MODIFICATION OF THE OPINION.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

For several years after 1881, Andrew Brown was a dealer in lumber in Buffalo, N. Y., and, through agents, was engaged in removing the timber from a tract of land owned by him in Carter county, Ky.  The timber upon that tract having been exhausted, he purchased, in 1885, the timber upon another tract belonging to appellee Gregory and Mrs. Clara E. Smith, and removed his machinery to that tract of land.  His business in this State was transacted entirely through agents.  In the spring and summer of 1889 he had drawn a number of drafts for sales

[26]

of lumber upon Gorton & Co., of Buffalo, and
Pagenstecher & Co., of New York City, in favor
of himself, which were accepted by the drawees, and by
them made payable at designated banks in the city of New
York, and were then endorsed in blank by Brown
and sold through brokers to raise money to carry on
his business. He was, and has for a number of years
been a depositor with the Bank of Commerce of Buffalo,
appellant here. On August 15, 1889, one of the drafts on
Pagenstecher & Co. matured, and was dishonored. Upon
August 19, 1889, Brown executed to the appellant a mort-
gage upon the tract of land owned by him in Carter
county, recited to be to secure the payment of $10,000.
It appeared that, in December, 1885, he had conveyed
this land to one Frank F. Brown, his second cousin and em-
ploye, who, on September 10, 1889, conveyed it to appel-
lant. He also executed a bill of sale on the same date of
all timber, machinery, and other personal property owned
by him in Kentucky, and the benefit of all contracts held
by him with the Eastern Kentucky Railway Company,
which was recited to be for a valuable consideration. Fif-
teen days afterwards, appellee Windmuller filed his peti-
tion in equity upon three drafts,—two drawn on Pagen-
stecher & Co., aggregating $11,000, and one upon Gorton
& Co., for $3,000; setting up the mortgage and bill of sale
referred to, alleging that they were made with intent to
defraud creditors, and to hinder and delay them in the
collection of their claims, and were executed in contem-
plation of insolvency, and with the design to prefer one
or more creditors, to the exclusion, in whole or in part,
of other creditors; praying for a judgment against the
property, that the bill of sale be set aside as fraudulent,
and that the mortgage be adjudged to operate as an assign-

ment for the benefit of creditors, under the act of 1856. Similar suits were instituted by various other creditors, appellees herein, upon similar paper; a similar suit was instituted by appellee Gregory for $1,000, alleged to be due him upon a contract; and the cases were consolidated, and judgment rendered. By the judgment, the demurrers to the petitions were overruled. The deeds from Andrew Brown and Frank F. Brown, and from the latter to appellant, and the mortgage and bill of sale to appellant, were adjudged to be fraudulent and void as to the creditors and Andrew Brown, to have been made in contemplation of insolvency, and in order to prefer appellant upon a pre-existing indebtedness to it, and to operate as an assignment to appellant for the benefit of all the creditors of Andrew Brown. The case was referred to the commissioner to hear proof and audit claims against Brown; and appellant was ordered to pay into court $14,000, upon the bond executed by it for the release of the property.

It is urged that the court erred in overruling the demurrers, in adjudging the conveyances fraudulent and void, in adjudging that the transfer was made in contemplation of insolvency, and to prefer appellant in a pre-existing claim to the exclusion of other creditors, in directing a reference to the master to hear proof and audit claims, and in requiring it and its surety to pay into court the $14,000.

Upon an examination of the record, there appears no sufficient evidence to support the charge of actual fraud. But it seems sufficiently apparent that the transfers were made in contemplation of insolvency, and with the design to prefer the appellant bank. At the time of the transfer, Brown owed the bank over $100,000; and, while the bank a few days later advanced him some $20,000 more, that appears to have been done with a view to enable him to rea-

lize upon the property included in the transfer. The bank does not sufficiently show—and the burden was upon it to do so—that the transfers were made to secure it for the advances thereafter made. That there was a design to prefer appears from the evidence of the appellant's cashier.

But it does not follow that the appellees are entitled to the relief they sought. It must first be ascertained whether they have debts against Brown; and, second, whether the transaction in New York operates as an assignment for their benefit.

Waiving, for the purposes of this opinion, the question of the sufficiency on demurrer of the petitions, and assuming that there is no contest over the claims of any appellee but Gregory, the question arises whether the Kentucky act of 1856 affects the New York transaction so as to make it operate as an assignment for the benefit of the New York creditors. All the appellees but Gregory are non-residents of this State. The transaction must be assumed to have been valid according to the laws of New York, for preferences were lawful at common law; and the common law is presumed to prevail in States where the contrary does not appear. It follows that the transfers will be treated by this court as valid, so far as the citizens of other States are concerned.

Said this court, through Judge Holt, in Matthews v. Lloyd, 89 Ky., 629, [13 S. W., 107]: "At common law, a debtor had a right to prefer a creditor either by a payment or an express preference in a deed of assignment. He has a right to pay his debt, and it is only by virtue of statutory law that such a payment can be held invalid, and the creditor be compelled to surrender his advantage. In the absence of any showing of the existence of such a statute in another State, it must be presumed that the

common law is in force there.  Miles v. Collins, 1 Metc., (Ky.), 308; Honore v. Hutchings, 8 Bush, 687."  And again pages 630, 631, 89 Ky., [and page 107, 13 S. W.]:  "The rules of the common law govern the transaction, and, when so considered, it is not invalid, because a payment of a pre-existing debt in view of coming insolvency is not forbidden by them.  It is urged that such a preference is contrary to the statute of this State, and will not, therefore, he upheld by its courts.  It is true, comity does not require one State to violate its own laws to enforce those of another.  Such a preference is not fraudulent or void, however, under our statute.  Upon the contrary, it operates as an assignment, not only of the particular property embraced by the preference, but of all the debtor owns for the payment of his debts *pro rata*, provided advantage be taken of it in the manner and within the time prescribed by the statute.  It merely inures to the benefit of all the creditors, if they, or any of them, so ask in proper time and manner.  It is a privilege given them.  If an assignment, made in another State, and valid there, be contrary to the law or the settled policy of this State, it will not be enforced here, to the prejudice of our own citizen creditors."  See also, Johnson v. Parker, 4 Bush, 149.

All the appellees, except Gregory, being confessedly citizens of other States, it follows, therefore, that, in the present state of the record, the statute can not be held to operate in their favor.

The validity of the claim of Gregory is in dispute, and the judgment makes no mention of his claim.  As to his claim, therefore, there is nothing for us to act upon.

The judgment is reversed, with directions for further proceedings consistent herewith, allowing appellees to amend, if desired, both as to the New York law and as to demand and protest upon the bills of exchange sued upon.