## Kenton Water Company v. Glenn, &c.

(Decided January 11, 1911.)

### Appeal from Kenton Circuit Court.
### (C. C. Law and Equity Division).

1. Where a water company has contracted with a town to supply it with water sufficient to protect the town and its inhabitant against fire, the contract inures to the benefit of the inhabitant who has suffered loss by a breach of the contract; and he may sue the water company for damages without joining the town as a defendant.

2. Where the contract between the town and the water company provides in one section for a supply of water for consumption in private dwellings, and in another section for a supply to the town for fire protection, the inhabitant's right to recover for the loss of his dwelling by fire depends upon the quantity and pressure of the water in the main pipes of the company, and is not to be measured by the quantity and pressure of the water which he was to receive for consumption and ordinary use in his dwelling.

3. Evidence as to the failure of the water pressure in the pipes in the dwelling, which are connected with the main pipes by a private service pipe, is admissible for the purpose of showing that the water pressure in the main pipes was insufficient for fire protection.

S. D. ROUSE for appellant.

MYERS & HOWARD for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The residence of the plaintiff, Glenn, with about one-half of its contents, situated in Latonia, was destroyed

by fire on November 26th, 1905. The plaintiff laid his loss for the house at $6,500.00, and the furniture and furnishings at $1,600.00. The house was insured for $2,500.00 and the furniture for $800.00. These amounts were paid to the plaintiff by the insurance company, leaving an alleged net loss of $4,800.00, for which sum he brought this suit against the Kenton Water Company for damages for its failure to supply a sufficient pressure of water to enable the plaintiff to extinguish the fire, and recovered $1,000.00.

The Kenton Water Company supplied water to the Board of Trustees of the Town of Latonia under a written contract, by which the water company agreed:

"1. To furnish for consumption in private dwellings, residences and store rooms and the premises thereof, water at a minimum annual charge * * *.

"3. To furnish water to the town of Latonia for fire protection only; fire plugs at an annual charge or rental, as follows: * * * all fire plugs to be installed and kept in repair at the cost of the Kenton Water Company. Fire plugs shall be installed at such places along the water mains as the Board of Trustees may direct * * *.

"6. The undersigned (Kenton Water Company) shall be authorized to supply water to private fire plugs and other pipes and apparatus by private individuals, companies, or corporations for their own fire protection and to charge such sums therefor as may be agreed upon.

"7. All service pipes, connections, etc., shall be made at the expense of the owner of the property or of the consumer, and shall be paid for in advance, the same not to exceed $25.00, extending from the main to the curb line of the street."

The other portions of the contract are immaterial to this controversy.

It may be considered as an established principle of the law of contracts in this State, that where a water company has contracted with a city to furnish a supply of water sufficient for the protection of the inhabitants and property of the city against fire, the company must answer in damages to the citizen for loss by fire resulting from its failure or refusal to perform its contract; and that an inhabitant of the city who has suffered loss by fire by reason of the water company's breach of its contract with the city may have an action against the water company without joining the city as a party de-

fendant. This class of cases comes within the rule which permits a party for whose benefit a contract is made to sue thereon in his own name, though the engagement be not directly to or with him. Paducah Lumber Company vs. Paducah Water Supply Co., 89 Ky. 340; Owensboro Water Co. v. Duncan's Admx., 17 Ky. Law Rep. 755; Georgetown Water, Gas, Electric & Power Co. vs. Neale, 137 Ky. 197.

The fire began between two and three o'clock on a Sunday afternoon. It first made its appearance in the roof, and smouldered for some time before the flame burst forth. Immediately upon the discovery of the fire, the occupants of the house attached a small garden hose to a water pipe which opened on the outside of the building and was connected with its water works. One or two of the persons present climbed upon the roof, carrying the garden hose with them, and attempted to extinguish the fire before it had made any substantial progress. The fire department responded within a reasonable time, but by reason of some mismanagement or accident, the fire plug in the street was broken, or injured to such an extent, that the firemen were unable to use it. They then moved their hose to another fire plug more distant from the fire. In the meantime, the occupants of the house had failed to make any impression upon the fire with the garden hose because the water failed to reach the fire. The evidence clearly shows that, while the stream ordinarily would be thrown from thirty to fifty feet, on this occasion did not reach more than from two to five feet from the nozzle of the hose; whereupon, after a few moments spent in a futile endeavor to utilize that method of extinguishing the fire, it was abandoned, and a bucket brigade was formed. Water was sought in the bath room and at the kitchen faucets, but without any success. The water flowed so slowly as to make it impossible to get a sufficient quantity to accomplish anything. Some of the witnesses testify that it would take from ten to fifteen minutes to fill a bucket. The bucket brigade was then abandoned, and those present devoted their time to saving the furniture. The house proved a total loss, and about one-half of the furniture was destroyed.

It will be seen from the first section of the contract that the water company agreed to furnish water for consumption in private dwellings; and by section three to furnish water to the Town of Latonia for fire protec-

tion. By section six of the contract the water company was authorized to supply water to private fire plugs and other pipes and apparatus of private individuals for their own fire protection. The contract, therefore, contemplated a distinction between the furnishing of water to individuals for fire protection, and the furnishing of water to the Town of Latonia for fire protection. The plaintiff had no contract for a supply of water to a private fire plug for his own fire protection, as he might have had under the sixth section of the contract. His rights in this case, therefore, are to be measured solely by the third section, which required the water company to furnish water to the town for fire protection.

Under the doctrine of the cases above cited, Glenn had the right to sue in his own behalf by virtue of the contract made between the water company and the town. And that is the theory upon which this case is brought. Glenn had no private fire plugs, and had made no provision for protection against fire except that which every citizen has by reason of the protection furnished by the town. The service pipe connecting Glenn's house and the public water main in the street was about 200 feet long. His case properly proceeds upon the theory that, if the pressure in the mains of the water company in the street at the point of their connection with the plaintiff's service pipe had been of sufficient strength to furnish fire protection, it would have furnished to him through his service pipe a sufficient supply of water to extinguish the fire; and it is a legitimate argument that the failure of the water supply at the nozzle of the plaintiff's hose is evidence of the fact that there was an insufficient pressure for fire protection in the main pipe in the street 200 feet away.

But, we are of opinion that the plaintiff's right to maintain this action depends upon the quantity and pressure of the water in the main pipes of the company, and that the plaintiff's right to fire protection is not to be measured by the quantity and pressure of water which he was to receive for consumption and ordinary use in the dwelling. If the contract had been with Glenn only, and for a supply of water for consumption and ordinary use in his dwelling, he could not, under the doctrine of the cases above cited, maintain this action for the water company's failure to furnish the city adequate fire protection. His right in that respect arises under, and is to be measured by the contract between the water company

and the Town of Latonia. The court, however, instructed the jury as follows:

"1. The jury are instructed that it was the duty of the defendant, under its contract with the City of Latonia, to maintain in its water mains such quantity and pressure of water, as would be reasonably sufficient to provide water .for consumption and ordinary use to private dwellings, and for fire protection when applied through the fire plugs provided for in said contract, but that for want of quantity or pressure of water in water pipes of residents and property owners attached thereto, due to any cause other than the defendant's failure to maintain such pressure and quantity in its water pipes, the defendant can not be liable.

"If the jury shall believe from all the evidence, that at the time of the destruction of the plaintiff's house by fire, the defendant failed to maintain in its water pipes, to which the plaintiff's water pipe was attached or connected, such quantity and pressure of water as would be reasonably sufficient to provide water for consumption and ordinary use to the plaintiff's dwelling and premises, or for fire protection when applied through the fire plugs provided for in said contract, and that by reason of such failure, if such failure there was, the plaintiff's house and personal property therein was burned, when it would not otherwise have been destroyed by fire, the jury will find a verdict for the plaintiff."

It will be seen from this instruction that the court based the plaintiff's right to recover, either upon the fact that the defendant had failed to maintain in its main water pipes such quantity and pressure of water as would be reasonably sufficient to provide water for consumption and ordinary use to the plaintiff's dwelling, or for fire protection when applied through the public fire plugs provided for in the contract. As against loss by fire the plaintiff was entitled to the protection afforded by the public fire plugs, but he was not, under the contract, entitled to have his loss by fire measured by the sufficiency of the water supplied for consumption and ordinary use in his dwelling. Under the instruction the jury had the right to find for the plaintiff in either of two events, while under the contract he had the right to recover only in one event, namely: In case there should be a failure in quantity and pressure of water for fire protection when applied through the public fire plugs. The failure of the pressure in the hose and in the bath

tub and kitchen faucets of the dwelling were properly admitted in evidence for the purpose of showing that the pressure in the main pipes and fire plugs was not sufficient; but this evidence was admissable for that purpose only. The error in the .instruction consists, as we have shown, in making those facts an additional and primary. ground for the plaintiff's ·right to recover, when they are evidential only of the single ground of recovery provided in the contract.

For this reason the judgment must be reversed, with directions for further proceedings consistent with this opinion.