## Tobin v. Frankfort Water Company.

(Decided March 27, 1914.)

### Appeal from Franklin Circuit Court.

1. Water Company.—Contract with City to Supply Water—Fire Protection—Suit by Citizen.—Where a water company has contracted with the city to furnish a supply of water sufficient to furnish protection to the inhabitants and the property of the city against fire, the company must answer in damages to a citizen for loss by fire resulting from failure or refusal to perform its contract; and he may sue the water company without joining the city as a party defendant.

2. Water Company—Contract with City to Supply Water—Fire Protection—Company's Liability.—Under a contract whereby a water company agrees to furnish and set 100 fire hydrants to be rented by the city, and to be under the charge and control of the chief of the fire department, or in his absence the officer in charge thereof, and providing that he may inspect the hydrants, and making it his duty to give to the company notice in writing specifying the hydrants out of working order, and imposing on the company the obligation, after receipt of such notice, to place such hydrants in effective working order with reasonable dispatch, no duty of repairing the hydrants is imposed upon the company until after such notice has been given.

3. Water Company—Contract with City to Supply Water—Fire Protection—Contract with City—Company's Liability—Petition—Demurrer.—Where under a contract with a city, a water company is under no obligation to repair a fire hydrant until notified in writing by the city's fire department, a petition, in an action by a citizen to recover the value of personal property

destroyed by fire, based on a failure to repair one of the hy-
drants, which fails to allege a failure to repair after such
notice was given, is not good on demurrer.

ROBERT B. FRANKLIN and ROBERT C. TALBOTT for ap-
pellant.

D. W. LINDSEY, JR., HAZELRIGG & HAZELRIGG, and JOHN
B. LINDSEY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Affirming.

Plaintiff, Lucile Tobin, brought this action against
the Frankfort Water Company to recover the value of
certain personal property which was destroyed by fire.
She bases her action on the claim that under the contract
between the city and the Water Company which was
made for the use and benefit of the inhabitants and resi-
dents of the city, it was the duty of the Water Company
to keep the fire hydrants in proper repair, and that on the
occasion when her property was destroyed one of the
hydrants was in a defective condition, and that the fire
department arrived in plenty of time to put out the fire,
and could and would have done so had it not been for the
defective condition of the hydrant. A demurrer was sus-
tained to the petition and the petition dismissed. Plain-
tiff appeals.

Accompanying the petition is a copy of an ordinance
granting to the water company a franchise to construct
and operate in the city a system of waterworks for sup-
plying the city and its inhabitants with water "for pub-
lic and private purposes." The ordinance was accepted
by the water company, and constitutes the contract be-
tween it and the city. The material parts of the ordi-
nance are as follows:

"Sec. 1. It being expedient and necessary to provide
a supply of water to the city of Frankfort and its in-
habitants for public and private purposes, and it being
inexpedient for the said city to procure and furnish the
said supply, the franchise and license is hereby granted
to the Frankfort Water Company of Frankfort, Ken-
tucky, a corporation organized and existing under the
laws of the State of Kentucky, and its successors and as-
signs, in perpetuity, but subject to the forfeiture herein-
after provided to construct and operate in and near the
said city waterworks for supplying the city of Frankfort

and the inhabitants of the said city and of its vicinity with water for public and private purposes, and use within the present and future limits of the city of Frankfort the streets and other public ways and places and the Kentucky river, for the purpose of placing, taking up and repairing mains, pipes, hydrants and other apparatus for the supply of water."

Secton 6 is as follows:

"The said Company shall furnish and set, at the places hereinafter mentioned, and connect with the said mains by branch pipes of the diameter of six inches each, one hundred fire hydrants of modern and appropriate pattern and good efficiency, each having two nozzles of the diameter of two and one-half inches each, their thread fitting the hose couplings now used by the fire department of the city of Frankfort. The said hydrants shall be located at the following named places: (Here follow names of places where hydrants are to be located.)"

"Sec. 7. There shall be no unreasonable obstruction of the public ways of the said city by the said company, in constructing the said works, or in placing, taking up or repairing any main, hydrant or other structure or device for the service of water; and the said company, after using the said public ways, shall restore them, within a reasonable time, to as good condition as before, and shall hold the said city harmless from any and all damages arising from negligence or mismanagement of the said company or of its employees, in constructing, extending or operating the said works.

"In all street excavations the said company shall keep red danger lights burning at night along the line of the said excavations, at least one light every one hundred and fifty feet, and shall erect barricades at the ends of the excavations, and at all street crossings on the line of the said excavations."

By section 11 the city rents the 100 hydrants for a period of 25 years. It further agrees to use the hydrants carefully and to pay the company for any injury which may happen to them when used by any officer or servant of the city or any member of its fire department. The rental value for each hydrant is fixed at $62.50 per annum.

"Sec. 12. The fire hydrants so rented of the said company shall be used for the extinguishment of fires only, and for flushing gutters and sewers. All flushing

shall be done through a hose and fire nozzle, and for such purpose no one hydrant shall be used exceeding thirty minutes per week, nor shall more than one hydrant opening be used for such purpose at any one time, nor shall any flushing be done during a fire, nor without notice to the said company.''

"Sec. 13. The said company shall constantly, day and night, except in case of any unavoidable accident, keep all fire hydrants rented of it by the said Board of Councilmen of the city of Frankfort supplied with water for instant fire service, at sufficient pressure to do away, within the reach of said hydrants, with the aid of steam fire engines. The Chief of the Fire Department, or, in his absence, the officer in charge thereof, shall have charge and control of the said fire hydrants, and may at any time cause such hydrants to be inspected; and if, on such inspection any of the said hydrants are found out of working order, it shall be his duty to notify said company, in writing, forthwith, specifying the hydrant or hydrants out of working order, whereupon the said company shall place such hydrant or hydrants in effective working order with reasonable dispatch, and the said officer shall report to the said Board of Councilmen of the city of Frankfort the date of such examination and the result thereof, and his subsequent action in the premises, if any; and in case any such hydrants shall remain out of repair for one week or more, after the said company shall pay the sum of ten dollars per week for each and every hydrant, for the period said hydrant is not in working order, after the said notice; provided that the total amount so to be paid shall not exceed double the yearly rental of such hydrant or hydrants; and in case the said waterworks shall after their completion and successful operation, suffer a suspension of the supply of water, for both domestic and fire purposes, exceeding thirty days, then and in that case the said company shall forfeit all franchises hereby granted, unless such suspension shall have been caused by circumstances beyond the control of the said company.''

Whatever may be the rule in other jurisdictions, it is the well settled law of this State that where a water company has contracted with a city to furnish a supply of water sufficient for the protection of the inhabitants and property of the city against fire, the company must answer in damages to a citizen for loss from fire resulting from its failure or refusal to perform its contract, and

an inhabitant of a city who has suffered loss from fire by reason of the water company's breach of its contract with the city may sue the water company without joining the city as a party defendant. Kenton Water Company v. Glenn, 141 Ky., 529; Paducah Lumber Co. v. Paducah Supply Co., 89 Ky., 340; Graves v. Logan, 112 Ky., 775; Lexington, &c. Mfg. Co. v. Oots, 119 Ky., 598. It must be remembered, however, that the measure of the rights and liabilities of the parties must in each instance be determined by the contract itself, and in order for a citizen to recover the value of the property destroyed it must appear that a failure on the part of the water company to comply with some provision of the contract was the proximate cause of the destruction of the property.

For the plaintiff it is insisted that under the contract in question the water company assumed the duty of furnishing the city and its inhabitants with water for public and private purposes. The contract gave to the water company the right to use the streets and other public ways and places for the purposes of placing, taking up, and repairing mains, pipes, hydrants, and other apparatus for the supplying of water. Under the contract the water company agreed to furnish and set 100 hydrants of modern and appropriate pattern and good efficiency. It is argued that the word "furnish" means to "keep supplied with," and in view of the fact that the contract contemplates that the water company shall have the right to use the streets and other public places for the purpose of repairing hydrants, imposes on the water company a continuing duty to keep the hydrants in repair. It is further contended that the provisions of section 13 in regard to notice, and imposing on the water company a penalty for a failure to make repairs after notice, in no way lessens the obligation of the water company to keep the hydrants in repair, but provides an additional remedy on behalf of the city. While this contention is urged with great ability, we are not inclined to agree with counsel for plaintiff that the contract imposes on the water company an absolute and continuing duty to keep the hydrants in repair. While it is true that the word "furnish" is sometimes used in the sense of "keep supplied with," yet in this case it must be construed in the light of the context and of the other provisions of the contract. Under the contract the hydrants are rented by the city. They are to be used only for the

purpose of extinguishing fires and flushing gutters and sewers. Under section 13, the water company agrees to keep the hydrants supplied with water for instant fire service. The same section provides that the chief of the fire department, or in his absence the officer in charge thereof, shall have charge and control of said fire hydrants, and may at any time cause such hydrants to be inspected, and if on such inspection any of the said hydrants are found out of working order, it shall be his duty to notify said company in writing, and forthwith specify the hydrant or hydrants out of order. Thereupon it is made the duty of the company to place such hydrant or hydrants in effective working order with reasonable dispatch. In view of the latter provision in regard to the duty of making repairs, and in view of the fact that the word ''furnish'' is followed by the word ''set,'' we conclude that the word ''furnish'' is used in the sense of ''provide at its own expense.'' When that was done the company complied with that part of the contract. The hydrants were then placed in the charge and control of the city, and could be used only for the purpose of extinguishing fires and flushing gutters and sewers. The duty of inspection then devolved upon the fire department, in whose sole charge and custody the hydrants were placed. No duty of repairing the hydrants is imposed on the water company until the fire department charged with the custody, control and inspection of the hydrants, gives to the company written notice that one of the hydrants is out of working order. In this case no failure to supply the hydrant with water is relied on. No written notice that the hydrant was out of repair was ever given. There being no duty to repair until the notice was given, it follows that the destruction of plaintiffs property was not caused by a failure on the part of the water company to comply with its contract. Therefore, the demurrer to the petition was properly sustained.

Judgment affirmed.