## Louisville Grinding & Machine Company v. Southern Oil & Tar Company.

(Decided June 11, 1929.)

MATT J. HOLT for appellant.

HENRY J. TILFORD and O'NEAL & O'NEAL for appellee.

Opinion of the Court by Judge Logan—Affirming.

The appellants are partners doing business under the partnership name of Louisville Grinding & Machine Company. They purchased a tract of land, and constructed on it a dirt motor speedway. Thereafter they incorporated a company under the name of Louisville Motor Speedway, subscribing for nearly all of the capital stock themselves. They found it necessary before there could be automobile racing on the track to put it in condition. It was necessary to pack and harden the track and settle the dust by the application of road oil. They approached the appellee with the object of procuring oil for that purpose. They testified that they informed the appellee that they knew nothing about road oils, and that they must depend on appellee to furnish such oil as would bind, pack, and harden the track and settle the dust thereon. A representative of appellee examined the track, and reached the conclusion that No. 5 standard light oil was the proper oil to use in accomplishing the purposes desired. Appellee declined to make a contract with the Louisville Motor Speedway, but agreed to furnish the material and perform the work for that company, if the Louisville Grinding & Machine Company would make a contract with appellee to have the material furnished and the work done. A written proposal was submitted by appellee to the effect that it agreed to spread oil on the track at a certain price per gallon, the oil used to be standard No. 5 light oil. The Louisville Grinding & Machine Company was to pay for the oiling of the track under the terms of the proposition submitted, and that company accepted the contract.

Appellee commenced the work, and during its progress some complaint was made by appellants, but, upon receiving assurance that the oil used was proper, and that the work would prove satisfactory for the purposes intended, it progressed to completion. The cost, under the terms of the contract, amounted to $2,217.21.

The appellants, contending that the oil was not suitable or fit for the purposes contemplated in the contract, refused to pay. Appellee instituted suit. Appellants answered, making defense on the ground that the oil was not suitable for the purposes intended, and set up a counterclaim. It was alleged in the counterclaim that the oil spread by appellee had to be removed, and that the track had to be resurfaced, and that the cost of this work was $4,044.64. They further set up as a counterclaim that they were deprived of the use of the track from July 4 until September, and that they lost net profits on that account amounting to $2,000. A demurrer was interposed to the two paragraphs of the counterclaim, and overruled. The case proceeded to trial, and at the conclusion of the evidence, the trial court sustained a motion for a directed verdict in favor of appellee as far as the counterclaim was concerned, and submitted the case to the jury on the cause of action set up in the petition. The jury returned a verdict in favor of the appellee for the full amount sued for.

Counsel for appellants offer as a reason for the reversal of the judgment that the trial court improperly sustained the motion for a directed verdict in favor of the appellee on the counterclaim, and that he improperly ruled out evidence relating to the counterclaim. Counsel argues that the trial court held that appellants could not recover on the counterclaim, because any damage sustained was suffered by the Louisville Motor Speedway, and that the court was mistaken as to the law governing such matters. He relies on a number of cases to support his contention as well as on section 21 of the Civil Code of Practice. The cases he cites deal exhaustively with the question. They are Matheny v. Chester, 141 Ky. 790, 133 S. W. 754; Spurrier v. Burnett, 207 Ky. 736, 270 S. W. 25; Moore et al. v. Caruthers et al., 17 B. Mon. (56 Ky.) 78; Fidelity & Casualty Co. v. Ballard & Ballard, 105 Ky. 253, 48 S. W. 1074, 20 Ky. Law Rep. 1169; Tobin v. Frankfort Water Co., 158 Ky. 348, 164 S. W. 956;

Kenton Water Co. v. Glenn, 141 Ky. 529, 133 S. W. 573;
Mutual Fire Ins. Co. v. Hammond, 106 Ky. 395, 50 S. W.
548, 20 Ky. Law Rep. 1944; Harth Bros. v. Farmer, 54
S. W. 739, 21 Ky. Law Rep. 1217; Bryant v. Jones, 183
Ky. 298, 209 S. W. 30; Burley Tobacco Growers' Co-
Op. Ass'n v. Boyd, 224 Ky. 271,,6 S. W. (2d) 241.

It may be that these cases support appellants in their
contention, but we find it unnecessary to determine that
question in this case.

It is contended by counsel for appellants that cer-
tain evidence offered to prove representations made by
appellee that the oil was suitable for the purposes in-
tended was excluded from the consideration of the jury
by the trial court. The evidence offered and excluded was
to the effect that appellee, through its representative, told
appellants, prior to and at the time of the making of the
contract, that No. 5 standard light road oil would pack
and bind the track and settle the dust thereon. The trial
court, in ruling out this evidence, held that the appellants
could go no further than to show that appellee had know-
ledge of the purposes for which the oil was to be used.
Counsel for appellants argues that this was serious error,
but he seems to have misconceived the meaning of the
ruling of the trial court. It has long been the rule in
this state that, when a purchase is made for a particular
purpose, and the particular purpose is made known to
the seller, with information as to the use which the buyer
expects to make of the material purchased and the thing
that the buyer expects the article to accomplish, there
will arise an implied warranty of the fitness of the article
so sold, if it is used in accordance with what is usual and
customary in the use of such an article or material. This
is a fundamental rule. If the seller knows what the buyer
is going to do with the thing purchased, that is, if he is
made acquainted with the intended use of the thing that
he sells, there arises an implied warranty that the pur-
chaser may rely on, to the effect that the article sold is
fit for the purpose, under proper management and con-
trol, that the buyer desires to use it for.

One of the leading cases on this question is that of
Glover Machine Works v. Cooke-Jellico Coal Co., 173 Ky.
675, 191 S. W. 516. Another is Paducah Hosiery Mills v.
Proctor, 210 Ky. 806, 276 S. W. 803. If this be the law,
and there is no doubt about it, the appellants were under
no duty to prove that appellee made affirmative represen-

tations that the oil which it sold and agreed to use was suitable for the purposes that the buyers had in mind at the time they accepted the contract. As this is true, the trial court ruled favorably to appellants when he held that it was only necessary for them to establish by the proof that appellee knew the purposes for which the oil was to be used. There was no error, therefore, in ruling out the evidence relating to affirmative representations made by the representative of appellee.

At the conclusion of all of the evidence, the court gave one instruction as follows:

> "The law of the case is for the plaintiff, Southern Oil and Tar Company, and you will so find in the sum of $2,217.21, with interest from the 8th day of July, 1926, unless you believe from the evidence that the oil sold by the plaintiff to the defendant was not reasonably suitable for the purpose of laying the dust and hardening and packing the surface of the road of the Louisville Motor Speedway Company, and if you so believe from the evidence, then the law is for the defendants and you will so find."

The jury could not find for appellee under that instruction without first determining that the oil sold by appellee to appellants was reasonably suitable for the purpose of laying the dust and hardening and packing the surface of the track of the Louisville Motor Speedway. If the oil was reasonably suitable for that purpose, it follows, necessarily, that appellants had no basis for their counterclaim. The jury, therefore, found that they had no basis for their counterclaim, and, although the trial court may have been mistaken as to the right of appellants to rely on a counterclaim, the error was not prejudicial. If the jury had returned a verdict in favor of appellants under the evidence and the instruction given, the counterclaim would have become one of importance, but, as the props were knocked from under the counterclaim by the verdict of the jury, it becomes unnecessary to consider what would have been the rights of the parties if the jury had reached a different conclusion.

Judgment affirmed.