CASE 54—PETITION EQUITY—MARCH 15.

# Hall, &c., v. Scott's Adm'r.

APPEAL FROM KENTON CHANCERY COURT.

1. VENDOR AND VENDEE—TITLE BY ADVERSE POSSESSION.—Where, pending an action to enforce a vendor's lien, the vendor's adverse possession ripens into a perfect legal title, that fact may be set up by an amended petition, and the vendee required to accept the title, although the vendor had no title when the action was commenced.

2. INTEREST PAYABLE SEMI-ANNUALLY.—Where a promissory note provides that it shall bear interest, "payable semi-annually," each semi-annual installment of interest bears interest from its maturity until paid, as any other interest-bearing debt; but the interest should be computed semi-annually only until the maturity of the note, and interest on the whole note should then be computed in the ordinary way; but interest on each preceding installment then unpaid should run until paid.

L. E. BAKER FOR APPELLANTS.

1. It was error to adjudge a lien in favor of Morrison for the reason that his alleged lien rests upon a void title, or rather upon no title at all.

Hall, &c., v. Scott's Adm'r.

Morrison's judgment was void, and the chancellor had the right to enjoin further proceedings thereunder. (Landrum v. Farmer, 7 Bush, 46.)

If a decree is void, it is a nullity as to both parties, and as to all other persons. (Hynes v. Oldham, 3 Mon., 267.)

All proceedings and sales under a void judgment are void. (Roberts v. Stowers, 7 Bush, 296.)

Morrison is barred from enforcing his alleged lien in this action by the injunction which is yet in force.

2. There is no foundation for a lien in favor of Scott's Adm'r. The alleged lien was reserved by Carlisle & Scott in their deed to Mrs. Hall, and the grantors having no title, their deed is void.

The claim that appellants have acquired title by adverse possession is not sustained by the record; but if it were, that fact can not avail Scott unless he can show in some way that he contributed to the acquirement of this possessory title.

3. As appellants took nothing by the deed of Scott & Carlisle, the note for purchase-money was without consideration, and it was error to render a personal judgment thereon.

COLLINS AND FENLEY FOR APPELLEE SCOTT.

1. Walker and all those claiming under him held the legal title under their several deeds, and the uninterrupted possession under these deeds for twenty-four years has ripened into a perfect title. (Hay v. Shannon, 3 Litt., 134; Gossom v. Donaldson, 18 B. M., 239; Craig v. Austin, 1 Dana, 517; Ring v. Gray, 6 B. M., 374; Farrow v. Edmonson, 4 B. M., 606.)

2. Plaintiff was entitled to interest *on interest* not only *until maturity*, but *until paid*. (Taliaferro's Ex'r v. King's Adm'r, .&c., 9 Dana, 331; Crosswait v. Misener, 13 Bush, 543.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellee, as administrator of J. S. Scott, sued the appellant, Mary A. Hall and her husband on a promissory note executed by them to said Scott as a part of the price of the land in controversy. The deed to said land was executed to the appellant, Mary A. Hall, by said Scott and J. G. Carlisle on the 31st of October, 1870.

Said Scott had no title to said property, nor did he pretend to have any; but, doubtless, being entitled,

by some arrangement with J. G. Carlisle, the real vendor, to the purchase-price of said land, he joined in the deed of conveyance. This was according to the agreement between the parties, which they had the right to make, and the appellant can not avoid the payment of the note upon the ground alone that said Scott had no title to the land.

But the appellants say that Carlisle had no title; that the title was in Andrew and Jemima Ernst, and, therefore, they should not be compelled to pay for said land. It appears that in a suit to foreclose a mortgage on the land, executed prior to the purchase of the same by Andrew and Jemima Ernst, said persons were not parties to the same, and Walker, the assignee of the judgment foreclosing said mortgage, purchased said land at the sale under said judgment in 1854, and in the same year, after he had received a deed, he sold said land, by deed, to J. G. Carlisle. The latter person sold the same in 1870, by deed, said Scott joining therein, to the appellant, Mary A. Hall. She and her husband immediately entered upon said land, and have held the actual adverse possession of the same ever since.

Andrew and Jemima Ernst, not having been made parties to said suit to foreclose, they, of course, were not divested of their title by said judgment and sale. All that the purchaser acquired, so far as they were concerned, was a lien on said land older and prior to their legal title. It follows that Carlisle acquired no greater right than his vendor acquired at said sale, which was only a prior lien as to Andrew and Jemima Ernst's legal title; and the appellants are entitled to

a rescission, unless time has ripened their possession, as claimants under Carlisle's deed, into a legal title.

It is alleged that Walker, Carlisle and the appellants entered upon said land, and held the adverse possession of it—each of the first two during the time that he claimed to own the same, the latter two from the time of their purchase until now. The said possession of either Walker or Carlisle is denied, but that of the appellants is admitted.

Have the appellants held the adverse possession under the Carlisle deed long enough to perfect their title? We think they have. The suit was commenced in 1884, not quite fifteen years from the time of the appellant's entry upon said land. But in 1887 the appellees set up by amended petition the foregoing allegations in reference to adverse possession, which was only partially denied as aforesaid. During all of these seventeen years the said Ernsts, or their heirs, could have brought suit for the recovery of said land, but they did not.

Now, it is well settled that if, at the time of the commencement of the vendor's suit concerning the land conveyed, he had no title to it, or a defective title, and he. acquires title, or his defective title is cured during the pendency of the suit, he may, by an amended pleading, set such title up, and the chancellor will compel the vendee to accept it. Fifteen years' adverse possession of land, the real owners of it having a right to sue for it all of that time, gives such possessor a legal title to it. The title thus acquired is as perfect and absolute as a perfect paper title. If, during the pendency of the suit involving

the title, the vendor, by an amended pleading, says, it is true at the commencement of the suit I had no title to the land, but since then I have acquired a perfect paper title, here it is, take it, the chancellor, if such proffered title is perfect, will compel the vendee to take it. Instead of a perfect paper title a perfect legal title by adverse possession is tendered, such title having ripened during the pendency of the suit, and there is no good reason why the chancellor should not permit that fact to be set up by an amendment, and compel the vendee to accept such title.

Said Scott's injunction, in his life-time, against Morrison, enjoining him from proceeding to collect the purchase money of said property arising from the sale of it under a judgment in his favor foreclosing a mortgage thereon, was abandoned after said Scott's death by his administrator and heirs; consequently, Morrison had the right to come into this case by cross-petition, and assert his lien, &c.

The note sued on by the appellee, administrator of Scott, bears date the — of ———, 1870, and fell due on the — of ———, 1873, with interest payable semi-annually. Upon the maturity of each semi-annual payment of interest it became a debt due, and it was from that time forward placed upon the same footing as any other debt due and payable at a certain time. Therefore, it bore interest from its maturity the same as any other interest-bearing debt, and said interest should run until it was paid. But said semi-annual interest should be counted until the maturity of the note, and it should then cease, and the interest on the whole note should commence and be computed in

the ordinary way; but the interest on each preceding installment unpaid should run until paid. It is true that interest runs on an interest-bearing debt after its maturity as a matter of legal right, and the same principle applies to interest on installments of interest after their maturity. But the agreement to pay interest by installments before the maturity of the debt itself is a special contract, by which the creditor is more benefited than by contracts bearing interest in the ordinary way. Therefore, it should be presumed, unless the contrary appears, that the parties contracted for the payment of semi-annual interest for and during the time that the paper was by the contract to run, i. e., until its maturity.

We understand that the judgment adopts the foregoing basis as to said interest, and in that view it will be enforced. We also understand that so much of the administrator's debt against Hall is to be applied to the payment of Morrison's debt as will satisfy the same, costs, &c.; but if there be an excess of the Morrison debt, the land is not to be sold to satisfy the excess.

The judgment upon original and cross-appeal is affirmed.