CASE 76—ACTION BY MARY E. OOTS AGAINST THE LEXINGTON HY-
DRAULIC & MANUFACTURING CO. TO RECOVER DAMAGES FOR THE
BURNING OF HER PROPERTY BY ITS FAILURE TO SUPPLY WATER.—
FEB. 2.

# Lexington Hydraulic & Mfg. Co. v. Oots.

APPEAL FROM FAYETTE CIRCUIT COURT—WATTS PARKER, CIRCUIT
JUDGE.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

WATER COMPANIES—CONTRACT WITH CITY—CONSTRUCTION—BREACH—
LIABILITY TO INDIVIDUAL PROPERTY OWNERS—EVIDENCE.

1. For breach of a contract between a water company and a city,
   whereby the company is allowed to lay water mains, and stip-
   ulates to furnish a certain pressure for fire hydrants, the com-
   pany is liable to an individual property owner for damages by
   fire from lack of the stipulated pressure; and this though the
   contract provides that the failure of the company to comply
   with it shall, at the option of the city, work a forfeiture of the
   company's right to rentals, and, if continued for thirty days,
   shall authorize the city to terminate the contract.

2. A contract of a water company with a city that it shall lay
   mains of sufficient length to properly connect the two hundred
   fire hydrants stipulated for, and of capacity to deliver the
   requisite quantity of water for fire protection and domestic
   supply as stipulated; that the main pipe leading from the pumps
   shall be 16 inches in diameter, and the remainder 12, 10, 8, 6,
   and 4 inches in diameter; that, in the construction of the water-
   works, the machinery and hydrants shall be of a certain make
   or of equal efficiency, and shall have two separate boilers, which
   machinery and boilers shall throw, if necessary, six streams
   of water at one time out of 2½-inch hose, with 1-inch nozzles,
   to a height of 80 to 100 feet—does not require a pressure suffi-
   cient to throw six streams of the prescribed force at one time
   and on one main, but merely to throw six such streams from
   six hydrants at different points on the system, where a pressure
   sufficient to throw six such streams from a 4-inch main would
   burst it and all the plumbing in the city.

3. On the question of the construction to be put on the part of a
   contract of a water company with a city for installing a water

Lexington Hydraulic & Mfg. Co. v. Oots.

system, as to the pressure required, a map showing location of the mains and hydrants, and the acceptance by the city of the system as shown by the maps, should be admitted in evidence.

BRECKENRIDGE & SHELBY, FOR APPELLANT.

C. J. BRONSTON, OF COUNSEL.

### POINTS.

1. The demurrer to the petition should have been sustained, because: (1) An individual citizen of a municipality can not maintain an action for the recovery of damages on account of a breach of a contract between the city and the water company. Patch v. Covington, 17 B. M., 728; Vrooman v. Turner, 25 Am. Rep., 195; Britton v. Green Bay, &c., Co., 29 Am. St. Rep., 856 (81 Wis., 48); Howsman v. Trenton Water Co., 41 Id., 654 (119 Mo., 304); Boston S. D. & T. Co. v. Salem Water Co., 94 Fed. Rep., 238; Notes in 33 Am. Rep., 5; 81 Am. Rep., 480; 18 Id., 380. (2) Even if such an action were maintainable in general, it can not be done where the contract between the city and the water company itself provides for a specific penalty in the event of a breach of its stipulations. Owensboro Water Co. v. Duncan's Admx., 17 Ky. Law Rep., 759-60. (3) The allegations of the petition as to the nature of the contract and a breach of its stipulations are not sustained by the contract itself, which is filed as an exhibit with the petition.

2. Under the contract between the city and the water company the latter was not bound to furnish six stipulated fire streams from any one main. It was the intention of the parties that the system as a whole should have capacity to deliver, when required, the six stipulated streams at one time.

3. The lower court erred in excluding the map, which was a part of the contract, and also the other evidence which showed that the 4-inch main was laid upon West Main street, pursuant to an understanding and agreement of the city and the water company.

4. The court should have set aside the swearing of the jury, because of the misconduct of plaintiff's attorney in propounding to the witness DeLong a question upon a subject which the court had ruled to be incompetent, and had directed that the plaintiff's exceptions to its rulings would be saved without asking the question in the presence of the jury

5. The court erred in refusing to give the instructions asked for by the defendant, and in giving those which were given by it.

6. The court erred in refusing to allow the jury to be sent to the pump house of the Water Company and see the machinery in operation.

7. The verdict of the jury is contrary to the evidence.

Additional authorities as to city's non-liability for negligence in extinguishment of fires. Dillon on Munic. Corp., sec. 774; 13 Am. & Eng. Ency. of Law (2d ed.), 78-9; Greenwood v Louisville, 13 Bush, 226; Jolly's Admr. v. Hawesville, 89 Ky., 279.

MORTON, WEBB & WILSON, FOR APPELLEES.

1. That an individual citizen of a municipality may maintain an action against a water company for the recovery of damages on account of a breach by such company of its contract with the city, is no longer an open question in this State. It has been forever settled by the judgments of this court in. the following cases: Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky., 340; Duncan, etc. v. Owensboro Water Co., 12 Ky. Law Rep., 35; Duncan's Ex'ors v. Owensboro Water Co. (2 cases), 12 Ky. Law Rep., 824.

2. The same doctrine is approved and followed in the recent case of Gorrell v. Water Supply Co., 124 N. Car., 328; s. c. 70 Am. St. Rep., 598; and see note by Judge Freeman, Annotator of Am. St. Reps. to Britton v. Green Bay Water Co. (Wisconsin), 29 Am. St. Rep., 863.

3. Inasmuch as this court, sitting *in banc*, in the recent case of Graves Co. Water Co. v. Ligon etc., cited above, has carefully reconsidered and reaffirmed the doctrine announced in Paducah Lumber Co. v. Paducah Water Supply Co., we shall not take up the time of the court in discussing the citizens' right of recovery in such cases as an original proposition.

4. It is true that the parties to a contract, by provision therein, may themselves assess the damages, recoverable on a breach, but it does not follow that in every case such an agreed assessment will be enforced, not even to effectuate the undoubted understanding and intention of the parties.

5. There is no question in this case that the hose in use at the time of the disastrous fire of June 7, 1901, was the same in size and general construction as the hose in use when the contract of December 12, 1883, was executed. Nor is there any question that the hose in use at the fire was what is known as "two and one-half inch hose," nor that the nozzles were "one inch nozzles." Hence it would seem that at the time of the fire, which destroyed appellee's property, the duty of the Water-

Lexington Hydraulic & Mfg. Co. v. Oots.

works Company as to the number and size of the stream it should furnish was plain. and unmistakable.

6. Our contention is that the contract under consideration can not be varied by parol that no authority is shown in the persons, who attempt to establish a separate and inconsistent agreement, to vary its express terms that the city and its inhabitants—beneficiaries under the contract—can not be estopped by any informal and unauthorized acts on the part of its officers or agents; that, to qualify or modify this contract would have required an act in the nature of a formal by-law or ordinance duly enacted by the proper city authorities.

### AUTHORITIES CITED.

Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky., 340; Duncan, etc. v. Owensboro Water Co., 12 Ky. Law Rep., 35; Duncan's Ex'ors v Owensboro Water Co. (2 cases), 12 Ky. Law Rep., 824; Paducah Water Supply Co. v. Paducah Lumber Co., 14 Ky. Law Rep., 141; Graves County Water and Light Co. v. Ligon, Allen, etc., 23 Ky. Law Rep., 2149; Gorrell v. Water Supply Co., 124 N. Car., 328, s. c. 70 Am. St. Rep., 598; note by Judge Freeman to Britton v. Green Bay Water Co., 29 Am. St. Rep., 863; Patch v. Covington, 17 B. Mon., 722; Owensboro Water Co. v. Duncan's Admrx., 17 Ky. Law Rep., 759-60; Clark on Contracts, p. 602; 19 Amer. and Eng. Ency. of Law (2d ed.), pp. 405, 406; Williston v. Matthews, 55 Min., 422; s. c. 56 N. W., 1112; Pengra v. Wheeler, 24 Ore., 532, s. c. 34 Pac., 354; Fisher v. Barrett, 4 Cush. (58 Mass.), 381; Chap. XIX of "Water-Works for Small Cities and Towns" by John Goodell, published by the Engineering Record, New York, 1899; Crane & Co., etc. v. Williamson & Co., 23 Ky. Law Rep., 689; Hollenbeck v. Missouri Pacific Ry. Co., 141 Mo., 97, s. c. 38 S. W. Rep., 723; Hughes, etc. v. General Electric Light and Power Co., 21 Ky. Law Rep., 1202; Meier, by etc. v. Weikel, etc., 22 Ky. Law Rep., 953; Henderson and Corydon Gravel Road Co. v. Cosby, 103 Ky., 182; Civ. Code, sec. 318; Act of Feb. 27, 1882, incorporating the appellant company, and the amendments thereto; Century Dictionary, definitions of "suitable" and "machinery;" Webster's International Dictionary, definition of "machinery."

Opinion of the court by JUDGE BARKER—Reversing.

On June 7, 1901, a cooper-shop on West Main street, in Lexington, Ky., belonging to the appellee, Mary E. Oots, was burned in a general conflagration extending over a large area

of the western part of the city. To recover damages for the destruction of her property, this action was instituted by appellee in the Fayette circuit court, based upon the alleged failure on the part of the water company to supply the requisite quantity of water, as stipulated for in its contract with the city. A trial of the action resulted in a verdict and judgment in favor of the appellee for the sum of $800, to reverse which this appeal is prosecuted.

So much of the contract between the water company and the city as we deem pertinent to a proper discussion of the issues involved in the case is as follows:

"Section 1. That there is hereby granted to the Lexington Hydraulic Company, or any other responsible company, their successors and assigns, the privilege of constructing and maintaining waterworks in the city of Lexington, and thereby to supply said city and its inhabitants with pure and wholesome water for public and private uses on the following terms and conditions, to-wit:

"Sec. 2. The said company shall build and put in operation, within one year from date of this contract a system of waterworks of a sufficient capacity to supply said city of Lexington with pure and wholesome water, for public, private and manufacturing uses.

"Sec. 3. The said company agrees to furnish the said city of Lexington with two hundred double discharge fire hydrants, to be located within said city, as shown on the map filed herewith.

"Sec. 4. The said city of Lexington agrees to pay the said company a sum not to exceed ten thousand dollars per annum rental for a term of twenty-five years from the date of completion and successful testing of said works, for said two hundred fire hydrants, to be paid to the superintendent of

said company in quarterly installments, or to such other persons as the said company may designate.

"Sec. 5. A failure by said company at any time to comply with any material term, condition and stipulation of this contract shall, at the option of the city of Lexington, work a forfeiture of any rights to claim the rental herein provided for, and said city shall have the right, if such failure continues for thirty days, unavoidable accidents and delays excepted, to terminate this contract. . . .

"Sec. 13. Said company, their successors or assigns, shall, within thirty days after the acceptance in writing of the privileges granted by this ordinance, proceed without delay to make suitable arrangements for carrying out the purposes of this privilege, and shall, within one year, lay in a suitable manner within said city suitable cast or wrought iron water mains of sufficient length to properly connect said 200 hydrants; and of capacity to deliver the requisite quantity of water for fire protection and domestic supply as herein provided for. The main pipe leading from the pumps to the city shall be sixteen inches in diameter, and the remainder of such mains shall be twelve, ten, eight, six and four inches in diameter; and there shall be located on said main pipes within the limits of said city two hundred double discharge fire hydrants at the points designated in said map, and the hose attachments are to be made to fit the hose now in use for the city of Lexington. The hydrants are to be provided and maintained by the company, their successors or assigns, and are to be connected with the street mains, but the connection of the hydrants with the mains are to be considered main pipes, and there shall be attached to the main pipes suitable valves to shut off the water from any line of pipe if found necessary. It is further provided that when said fire hydrants have been established and erected, their location

shall not be changed. The said city council may, from time to time, by ordinance and resolution, require the said company, their successors or assigns, within a reasonable time, not to exceed in any case ninety days, to extend said mains and pipes to other parts of the city, the extension to be from the terminus of any main, or from the intersection of the mains at any two streets, as the case may require, and the said company, their successors or assigns, shall erect and maintain one double discharge fire hydrant to every 300 feet or fraction thereof of such extension, the same to be located as the city may direct along the line of said proposed extension. . . .

"Sec. 15. In consideration of the benefits to said city and the inhabitants thereof, to be derived from the construction and operation of said waterworks, and for the unrestricted use of said 200 fire hydrants for the extinguishment of fires, the said city of Lexington agrees and binds itself to pay to the said company, their successors or assigns, the annual sum of ten thousand dollars, for the full term of twenty-five years from the completion and testing of said waterworks, for the rental of said two hundred hydrants, the same to be paid quarterly to the superintendent of the said company, or to such other person as said company may designate, and in the same manner to pay fifty dollars per annum for all hydrants on extended mains and all intermediate hydrants which are subject to rental as above, for the remainder of said term of twenty-five years after the water is turned on.

"Sec. 16. In consideration of the rights and privileges herein granted to the said company, their successors or assigns, and the ten thousand dollars annual rental to be paid as aforesaid, the said company, their successors or assigns, shall give at all times unto said city the free and unobstructed use for fire purposes of any and all the fire hydrants located

and maintained as aforesaid; and the said city, by its proper officers and employes, shall have the right at all times, for the purpose of extinguishing fires, to take water from said hydrants without further cost or charges to said city. And in the construction of said waterworks the machinery and hydrants shall be manufactured by the Holly Manufacturing Company, of Lockport, New York, or by any other company which may be agreed upon between said company and the waterworks committee, to be of equal efficiency, and shall have two separate boilers, which machinery and boilers shall throw, if necessary, six streams of water at one time out of two and one-half inch hose, with one-inch nozzles, to a height of between eighty and one hundred feet. And it is further provided herein, that the said city shall have water free of charge for four troughs for watering animals, to be located by the city council, which, with the pipes and fixtures therefor, shall be furnished by the city, and to be provided with self-closing valves, and shall furnish water free of charge for the city buildings, the city paying for hydrants and fixtures, and the said company to furnish said hydrants and fixtures at actual cost. And it is further provided that no charge is to be made for water used for filling the public cisterns or for exhibition of the fire department or for cleansing the public gutters or sewers, provided that no more than one and one-half inch stream be used at a time, one hour each day for each gutter or sewer; and further provided, that water for filling cisterns, for exhibitions of the fire department and for cleaning gutters and sewers, shall be taken only at stated times, or on reasonable notice by the mayor or marshal of said city to said company."

It is insisted by appellant that the case should be reversed for the following reasons: (1) The petition fails to state a cause of action, because there is no privity of contract be-

tween appellant and appellee; (2) the contract itself furnishes a remedy for the failure of the water company to perform its stipulations, and this remedy is exclusive; (3) the verdict is contrary to the evidence; (4) the court misinstructed the jury. Of these in their order. ·

The first proposition involves the soundness of the principle first enunciated in this state in the case of the Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky., 340, 11 R., 738, 12 S. W., 554, 13 S. W., 249, 7 L. R. A., 77, 25 Am. St. Rep., 536, that for breach of contracts such as that under consideration the company is liable to the individual property owner for damages by fire resulting from lack of water. At the urgent solicitation of the learned counsel for appellant, we have reconsidered the opinion in that case, and have pondered long on the forceful argument with which he has sought to overthrow the conclusion reached therein, with the result that we have determined that the opinion furnishes a correct exposition of the law on the subject involved, and we therefore adhere to it as authority. It is true, as well said by counsel, a principle ought never to be considered settled until it is settled right; but it is equally true, when settled right, it ought to be adhered to without reference to the number of adjudications in other jurisdictions holding a contrary view.

The second proposition is based upon section 5 of the contract, which prescribes that any failure of the company to comply with any material part of its covenant shall, at the option of the city, work a forfeiture of its right to claim the rentals stipulated, and the city shall have the right, if this failure continues for 30 days (unavoidable delays and accidents excepted) to terminate the contract. This remedy is claimed to be exclusive of any other. To this we can not agree. While it is true the parties to a contract may stipu-

late a remedy for its violation, and oftentimes the remedy will be deemed exclusive, that principle has no application here. If it be true, as we have said, that appellee has an action for the loss of her property by reason of a breach of its contract by appellant, section 5 does not supply her with a remedy, or in any wise remunerate her for the loss she has sustained. If the principle we have stated as to the responsibility of appellant is to be maintained, section 5 must be deemed as affording a remedy to the city by which it can control the company, and prevent a prolonged failure on its part to perform its contract, which is different from and additional to the remedy of appellee for her loss. To say that the remedy provided in section 5 is exclusive of all others for breach of contract on the part of appellant is but another mode of saying that Paducah Lumber Co. v. Paducah Water Supply Co. should be overruled, and the principle contended for by appellant, that there is no privity of contract between it and the appellee, should be substituted as the correct rule of law.

As to the third proposition, the evidence adduced on the trial was voluminous in its quantity, and very conflicting in its character, and we are unable to say that the conclusion reached by the jury on the facts is so obviously contrary to the great weight of the testimony as to warrant us in invading their province and setting aside the verdict.

The fourth proposition urged by appellant is that the court misinstructed the jury, and the soundness of this position depends upon the construction to be given the contract as to the pressure to be furnished in case of fire. By section 13 it is provided that the company shall "lay in a suitable manner within said city suitable cast or wrought iron water mains of sufficient length to properly connect said 200 hydrants; and of capacity to deliver the requisite quantity of

water for fire protection and domestic supply as herein provided for. The main pipe leading from the pumps to the city shall be sixteen inches in diameter, and the remainder of such mains shall be twelve, ten, eight, six and four inches in diameter." On the water mains there were to be located 200 double-discharge fire hydrants at points designated on a map showing the system as contemplated. By section 16 it is provided that "in the construction of said waterworks the machinery and hydrants shall be manufactured by the Holly Manufacturing Company, of Lockport, New York, or by any other company which may be agreed upon between said company and the waterworks committee, to be of equal efficiency, and shall have two separate boilers, which machinery and boilers shall throw, if necessary, six streams of water at one time out of two and one-half inch hose, with one-inch nozzles, to a height of between eighty and one hundred feet." This is the portion of the contract upon which the question now under discussion turns. It is insisted by the appellee that by this language the company was under contract to furnish pressure, when necessary, sufficient to throw six streams at one time, and on one main, out of two and one-half inch hose, with one inch nozzles, to a height of between 80 and 100 feet, and therefore it was its duty to have a pressure sufficient upon the mains contiguous to appellee's property to throw six streams of water at one time, to the prescribed height, out of the hydrants located thereon. Appellant insists that the language of the contract should be given its natural meaning, and there should not be interpolated into it words which would make it read as if the covenant was to furnish sufficient pressure to throw six streams of water of the given force at one time and at one place; that the real meaning of the contract is that the pressure at the pumping station should be sufficiently great on the whole system to throw six

streams of water from six hydrants at different points thereon; and it is urged that the evidence shows that a pressure sufficiently great to force water through a four-inch main with sufficient velocity to meet the requirements of appellee's construction of the contract would not only burst the pipe, but all of the plumbing in the city, and, under the well-known rule of construction of contracts, this, if it can be avoided, must not be given an interpretation which imposes a duty impossible of performance, but the more reasonable one contended for by the appellant should be adopted. This reasoning we think is correct. The contract is, of course, mutual, and the covenant in question bears a direct relation to the consideration moving from the city to the company; and, while it doubtless would have been better to have had all the mains of a dimension sufficient to have sustained the pressure resulting from appellee's construction of the contract, that would have entailed a higher rental, and this, presumably, the city was unwilling to pay. The dimensions of the water mains are prescribed in the contract, four-inch mains being authorized in certain parts of the city; and, as the water was to be supplied from the pumping station by direct pressure, it would be an unreasonable construction to say that this pressure should be so great as to burst all the four-inch pipe and all the plumbing in the city, and thus render the whole system an absolute failure.

The water system of appellant was established in 1885, and has been in use ever since. The mains were laid under the supervision of a specially appointed waterworks committee, whose business, presumably, was to see that the interest of the city was protected; and, after the system was completed, a trial of its efficiency was had, and a favorable report made thereof to the city council, who by resolution accepted it as

installed. This resolution, which was adopted on February 25, 1885, is as follows: "Be it resolved by the mayor and board of councilmen of the city of Lexington: That whereas the Lexington Hydraulic and Manufacturing Company having completed the system of waterworks provided for in the contract entered into between the city of Lexington, State of Kentucky, and said company, and complied fully with the tests and requirements provided for in said contract—therefore, the mayor and board of councilmen, acting for and in behalf of said city, hereby formally accept said system of waterworks as required by said contract." It thus appears that at the very beginning it was known by the city that the company had laid four-inch mains on certain streets, and it accepted this as a valid fulfillment of the contract. We are not willing, under these circumstances, to put a construction upon the contract which, if enforced, would result in the destruction of the whole system, and render abortive the very end sought to be attained by its establishment. The jury should have been told by the court, in substance, that, under the contract existing between the city and the company, the latter was required, when necessary, to furnish a pressure upon the whole system sufficient to throw six streams of water of the given dimensions and power at one time from hydrants located at different points on the system, and that the contract of the appellant was fulfilled, if, at the time of the fire which damaged appellee, there was on the water mains contiguous to her property such pressure as would naturally result from the before-described pressure on the whole system; that, if there was such proportionate pressure on these contiguous mains when necessary for the purpose of extinguishing the fire in question, appellant was not liable, but, if such proportionate pressure was not on the mains contiguous to appellee's property when the necessity for it arose, and

the failure to have it there was the proximate cause of the destruction of her property, then appellant was liable to her for the resulting loss.

The instructions given on the former trial, modified to meet the views above expressed, will, in our opinion, correctly embody the law governing this case as shown by the record.

Without particularity of statement, we think the trial court correctly ruled on the questions raised as to the competency and relevancy of the testimony. We deem it unnecessary to pass upon what is called the misconduct of appellee's counsel, as this will not be repeated on a retrial of the case. We perceive no error in the record, other than as above pointed out.

The judgment is reversed for proceedings consistent herewith.

Judge Nunn dissents from the proposition of law in the opinion upon which this case is reversed.

Response on rehearing by Chief Justice Hobson:

The map referred to in the evidence, showing the location of the mains and hydrants, should have been admitted; also the excluded portions of the depositions of Johnson and Davidson, and the excluded portion of the testimony of Gunn relating to the map, and the acceptance by the city authorities of the system of mains as shown on the map.

The petition for rehearing is overruled, and the opinion is modified as above indicated.