CASE 72.—ACTION BY R. L. McDADE AGAINST THE SHELBY-
     VILLE WATER & LIGHT CO. FOR LOSS BY FIRE
     BY REASON OF THE FAILURE OF THE COMPANY
     TO HAVE A SUPPLY OF WATER IN ITS MAINS AS
     REQUIRED BY ITS CONTRACT WITH THE CITY.—
     April 18.

## Shelbyville Water & Light Co. v. McDade

Appeal from Shelby Circuit Court.

R. F. PEAK, Circuit Judge.

Judgment     for     plaintiff.     Defendant     appeals.
Reversed.

1. Evidence—Declarations of Agent—Effect—Declarations by an
   employee running the works of a waterworks company, made
   while he was near the reservoir of the company and out on
   its grounds, to the effect that he had not water in the reser-
   voir, are inadmissible as against the company.
2. Same—Self-Serving Declarations—In an action against a water-
   works company for loss from fire on the ground of failure to
   furnish water, evidence that the employee in charge of the
   works stated to the manager of the company at the time the
   alarm of fire was given that he had a pressure of fifty pounds,
   was inadmissible.
3. Water-Works Companies—Fire—Failure to Supply Sufficient
   water—Evidence—In an action against a waterworks company
   for loss from fire, based on its failure to furnish a supply of

water, as required by its, contract with the city, evidence showing that the employee running the works was ordered not to apply the direct pressure at the power house unless he received order from the manager in the city, who would give the order when the magnitude of the fire required it, and that on the occasion in question the direct pressure was applied when ordered, was admissible.

4. Same—In an action against a waterworks company for loss from fire for failure to supply water, as required by its contract with the city, evidence showing what pressure it usually maintained was admissible.

5. Same—The company was entitled to prove what pressure would be required to throw water from three separate hydrants, at one time, fifty feet high, through 100 feet of hose and a one-inch nozzle, on the level of a street in the city, as required by its contract with a city.

6. Same—The company was entitled to prove by persons using faucets and hose just before the fire that they had the usual pressure, and this proof should not be confined to the main with which plaintiff was connected; it being shown that there were not cut-offs between the mains.

7. Same—Liability—A waterworks company was required by the ordinance of a city to maintain such a pressure of water on its mains as would throw water from three separate hydrants at one time, fifty feet high, through 100 feet of hose and a one-inch nozzle, on the level of a street. The company was sued for loss from fire on the ground that it occurred by reason of the failure to have a supply of water as required by the ordinance. Held, that the court should charge that if the company failed to maintain such a pressure of water as was required by the ordinance, and plaintiff's property was burned by reason thereof, when it would not otherwise have been destroyed, a verdict for plaintiff should be rendered.

WILLIS & TODD, attorneys for appellant.

## POINTS AND AUTHORITIES.

1. The verdict is contrary to the law and evidence and is not sustained by the evidence.

2. The court erred to the prejudice of the defendant in the admission and rejection of evidence.

3. The court misinstructed the jury.

4. The court erred in not granting a new trial on the ground of newly discovered evidence material to the defendant.

### AUTHORITIES.

Koch v. Goodshaw, 75 Ky., 318 (12 Bush); Wash v. Cary, 17 L. R., 1066; Parkers Adm'r v. Cumberland Telephone & Telegraph Co., 25 L. R., 1391; Ky. Cen. R. R. Co. v. Bowen, 8 L. R., 609; Adam's Oil Co. v. Stout, 19 L. R., 760; L. & N. R. R. Co. v. Wade, 11 Ky., 953; Berberick v. Louisville Bridge Co., 20 L. R., 467; Branch v. Clark, 6 L. R., 220; Able v. Frazier, 43 Iowa, 175; Wayt v. Burlington C. R. & M. R. Co., 45 Iowa, 610; Goldsworthy v. Linden, 14 L. R. A., 610; Anderson v. State, 43 Conn., 514; Parker v. Hardy, 24 Pick. 246.

BEARD & MARSHALL for appellee.

### AUTHORITIES CITED.

Richardson v. Huff, 19 Ky., L. R., 1428; Finley. v. Curd, 22 Ky. Law Rep., 1902; Reder v. Sullivan, 15 Ky. La Rep., 749; Oberdorfer v. Newbarger, 23 Ky. Law Rep., 2320; Allen v. Perry, 6 Bush, 85; Louisville Ins. Co. v. Huffman, 24 Ky. Law Rep., 980.

OPINION BY CHIEF JUSTICE HOBSON—Reversing.

The livery stable of R. L. McDade in Shelbyville was burned on May 11, 1904, and he brought this action against the Shelbyville Water & Light Company to recover for the loss, on the ground that it occurred by reason of the company's failure to have a supply of water in its mains as required by its contract with the city. The material part of the contract is contained in the following sections of the city ordinances:

"Sec. 227. Said grantee, its legal representatives, assigns or successors shall test said works on their completion, under the supervision of the said board of council, and when said works shall throw water from three separate hydrants at one time, fifty feet high, through one hundred (100) feet of hose and a one-inch nozzle on the level of Main and Fifth street

in said city, and when said test has been made, then the city agrees to accept the water service herein agreed to be supplied, and from the date of completion of said test, if successful, the hydrant rentals herein stipulated shall begin.''

"Sec. 236. The city of Shelbyville agrees to use the said fire hydrants only for the extinguishment of fires, except when used as otherwise herein provided for, and to make good to the said grantee, its legal representatives, assigns and successors any injury which may happen to any of said hydrants when used by said city, or any officer or servant or agent of said city, if same is done by the fault of said city, officers, agents or servants, and hereby agrees and promises to pay rent for said fifty-four hydrants at the rate of $2,500 per annum for the said term of thirteen years and six monts, or $2,500 per annum for such part of the said thirteen years and six months, as said waterworks shall be operated under this ordinance, which rental the city of Shelbyville hereby agrees to pay in semiannual installments of $1,250 each on the first days of March and September in each year during said term to said grantee, its legal representatives, assigns and successors; provided, however, that all forfeitures under this ordinance, which may be due said city at the time specified for the payment of any hydrant rental shall be deducted from the amount of such payment.

"Sec. 237. The said grantee, its legal representatives, assigns and successors shall constantly, day and night, except in cases of an unavoidable accident, keep all of said hydrants supplied with water, and at night the arc lights herein named with electricity, for service herein provided for. The city shall have

Shelbyville Water & Light Co. v. McDade.

the right to put upon the original mains hereinbefore mentioned, at its own cost and expense any intermediate fire hydrants free of charge for water, during the time of the rental of the said number of hydrants herein mentioned, which said hydrants shall be kept and maintained in repair by said grantee, its legal representatives, assigns and successors, charging the city therefor the actual cost of such repair. The said grantee, its legal representatives, assigns and successors shall constantly keep all hydrants rented of them or used by the city supplied with water, and the arc lights at night supplied with electricity, for service and shall maintain them in effective working order. The chief of the fire department of said city, and in case of his absence, the officer in charge thereof, shall have the charge and control of said hydrants, to be inspected and if upon inspection any of said hydrants are found to be out of working order, he shall forthwith notify the chief officer in charge of the water works, in writing, specifying the hydrant or hydrants out of working order, and said officer at the waterworks shall forthwith repair the same, and if not put in working order within three days after such notice, the rental of such hydrant or hydrants shall be stopped, and the grantee, its legal representatives, assigns and successors shall pay to the city a forfeit of five dollars ($5.00) per week for each, while such hydrant or hydrants remain out of repair after such notice, and ten dollars ($10.00) per week for each arc light that remains out of repair after such notice, but such penalties shall not accrue against hydrants owned by the city.''

The proof for the plaintiff on the trial showed

that the second story of the livery stable had a large quantity of hay and straw stored in it: that there was a water pipe leading up from the first to the second story, with a place to attach a hose on each floor, and the hose was kept on a reel near by, both above and below. The water was turned on by means of a switch, and the evidence is a little confused as to how this worked; that is, whether it could be turned on from the upper floor alone, or whether it had to be first turned on below. When the alarm of fire was given, McDade went up to the second floor and undertook to attach the hose and turn on the water. The testimony for him is to the effect that the fire then was small, and could have been put out if he had had water, but there was none. The testimony for the company tends to show that in a few seconds after the alarm of fire was given the whole upper story of the building was in flames, as though a volcano had bust out; also that other persons using hose about the same time had adequate pressure, and that there was water in the standpipe and in the mains sufficient to comply with the contract. The evidence on this question was very conflicting, and the only matters to be determined are whether the case was fairly gotten before the jury.

The court allowed the plaintiff to prove by J. M. Hammond and Jess Russell that they were working a few hundred yards from the pumping station, and when they heard the fire alarm and saw the smoke they came right over to the water works to find out where the fire was; that Hubert Duvall was there running the works; that they met him near the reservoir out in the grounds, and asked him where the fire was, and he answered that there was a big fire in

town, and he did not have a bit of water. To this evidence the defendant objected, and, its objection being overruled, excepted. When the defendant was giving its evidence, it offered to prove by the manager of the company that when the alarm of fire was given he telephoned the alarm to Duvall, and asked him what water he 'had; but the court would not allow him to tell that Duvall answered that he had a pressure of fifty pounds. The rule as to the admissibility of the declarations of an agent is thus stated in 1 Greenleaf on Evidence, section 126: ''The party's own admission, whenever made, may be given in evidence against him; but the admission or declaration of his agent binds him only when it is made during the continuance of the agency, in regard to a transaction then depending, et dum fervet opus. It is because it is a verbal act, and part of the res gastæ, that it is admissible at all, and therefore it is not necessary to call the agent himself to prove it; but, whenever what he did is admissible in evidence, there it is competent to prove what he said about the act while he was doing it.'' As to all other facts in the knowledge of the agent he must be called to testify like any other witness. Section 134. The same rule is stated in 2 Wharton on 'Evidence, sec-- tion 1173, as follows: ''Whenever an agent makes a business arrangement or does an act representing his principal, what he does in respect to the arrangement or act, while it is in progress, is so far part of the res gestæe as to be subsequently admissible in evidence on behalf of either party. Whenever the agent's acts are so admissbile, then his contempora- neous declarations, explanatory of these acts, are admissible; nor in proving such declarations is it

necessary that he should be himself called.'' See, also, to same effect, Stephens on Evidence, art. 17, chap. 4.

In Landhorn v. Allnut, 4 Tau. 511, the question was whether a ship remained at a port for an unreasonable time. Letters from the plaintiff's agent to the plaintiff containing admissions which would have been admissible if made by the plaintiff himself were held incompetent against him. In Mateer v. Brown (Cal.) 52 Am. Dec., 303, the plaintiff sued the defendant for a lot of gold which was lost. He proposed to prove that Higgins, the defendant's barkeeper, had said that the plaintiff had made his pile, and he, opening a closet and raising a bundle, said it was the plaintiff's, and was about $6,000. The evidence was held incompetent. The court, after quoting the rule of evidence as above, said: ''Were the declarations of Higgins a part of the res gestæ, according to the above rules? We think not. There was no act done by him, in his character of agent, at the time of making them, which would have been admissible evidence against the defendant, and which such declarations were calculated to qualify or explain. They were not made at the time he received the deposit. Had they been then made, they would, perhaps, have been competent. They were made when Higgins took the bundle out of the closet to exhibit it to a stranger. This was not done by him in the discharge of his duties as agent, and the declarations accompanying that act were but hearsay.'' To same effect, see 16 Cyc. pages 1003, 1006, 1007, and cases cited in the notes; 3 Wigram on Evidence, section 1797, and note.

Duvall was not acting as agent in any sense for his

employer when he made the statements to Hammond and Russell. These statements were introduced on the trial to show an admission by Duvall that he had no water in the standpipe. But Duvall had no authority from his principal to make any such admissions for it. He could not make evidence for his company by his statements to the manager, and he cannot make evidence against it by his statements to Hammond and Russell. If at the time Duvall had been doing something for the master, and there was a dispute as to what he did, then his statements while doing the act would be competent against the master, as illustrating its character on the ground of res gestæ. But the evidence in question did not relate to any such matter, and was incompetent for any purpose as substantive testimony. For the same reason the court should not have admitted the testimony of John B. O'Leary as to the conversation between him and Duvall, and properly excluded it. The statements of Duvall on this subject may be used to contradict him as a witness, but they are incompetent for any other purpose.

The court refused to allow the defendant to explain how and why the direct pressure was applied to the mains. The defendant offered to show that Duvall was ordered not to apply the direct pressure at the power house unless he received orders from the manager in the city, who would give the order when the magnitude of the fire required it, and that on the occasion in question the direct pressure was applied when ordered. This evidence should have been admitted, for otherwise the jury might have inferred from the fact that the direct pressure was applied that there was want of water in the standpipe.

The defendant also offered to prove by a number of witnesses, who were using faucets or hose just before the fire, that they had the usual pressure. On another trial the defendant may be allowed to show what pressure it usually maintained; also what pressure would be required to throw water from three separate hydrants at one time fifty feet high through 100 feet of hose and a one-inch nozzle on the level of Main anf Fifth streets in the city; and it should also be allowed to show by the witnesses referred to that they, in using their faucets and hose at the time named, had the usual pressure. The proof should not be confined to the main with which McDade connected, for the proof shows that there were no cut-offs between the mains, and it is a well-known rule of hydraulics that a standing mass of water presses equally on all sides at all points on the same level. If there was a difference of level at which any of the witnesses used the water, this may go to the jury, so that they may judge intelligently as to the value of the evidence.

In lieu of instruction 2, the court on another trial will tell the jury that it was incumbent upon the defendant under its contract to maintain such a pressure of water upon its mains as would throw water from three separate hydrants at one time fifty feet high through 100 feet of hose and a one-inch nozzle on the level of Main and Fifth streets in the city, and that if it failed to do this, and by reason of such failure the plaintiff's property was burned, when it would not otherwise have been destroyed by fire, they should find for the plaintiff the reasonable and fair value of the property so destroyed, with interest from May 11, 1904. The instructions we have indicated,

with instructions, 3 and 4 given by the court, contain the whole law of the case.

Judgment reversed, and cause remanded for a new trial.

Petition for rehearing by appellee overruled.