# Kentucky Utilities Co. v. Farmers' Co-op. Stock Yards Co.

(Decided June 3, 1932.)

GORDON, LAURENT & OGDEN, and E. W. SENFF for appellant.

REID PREWITT, EDWARD C. O'REAR, and ALLEN PREWITT for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The Farmers' Co-operative Stock Yards Company, during the winter of 1923-24, constructed on its lot located at the corner of Locust street and Wilson alley in

Mt. Sterling, Ky., a barn and stock pens, and thereafter engaged in the business of selling live stock on commission. The lot and the improvements erected thereon cost approximately $35,000. The barn fronted on Locust street 90 feet and extended back along Wilson alley about the same distance. On the ground floor of the barn were located the offices of the company and some stalls and stock pens. There was a driveway running through the center of the barn, and on either side of it over the offices and pens was a loft in which was stored hay and oats, most of which was baled. The main stockyards were north and east of the barn, were roofed over and contained pens, alleyways, loading chutes, and a sales arena. The buildings occupied most of a city block.

On October 7, 1928, the improvements on the lot were completely destroyed by fire, and thereafter the appellee brought this action against the Kentucky Utilities Company to recover $27,000, the alleged value of the buildings, and $1,000, the alleged value of certain personal property which was located in the barn at the time of the fire. The Kentucky Utilities Company is a public service corporation which owns the water distribution system of Mt. Sterling and which at the time of the fire was operating the water system under a franchise granted by the city.

The action is based on the claim that under the contract between the city and appellant it was the duty of appellant to furnish an adequate supply of water for all purposes, public and private, and sufficient pressure for extinguishing fires, and that it failed in that duty. Charles E. Duff owned the hay and oats stored in the barn and he brought suit against appellant to recover the sum of $4,375. The two cases were consolidated and tried together. The jury returned a verdict in favor of appellant in the Duff case, but returned a verdict for $10,000 in favor of the Farmers' Co-operative Stock Yards Company. The jury stated in its verdict that it found for the plaintiff $10,000 damages on the stockyards and nothing on personal property.

On this appeal it is argued that the judgment should be reversed for the following reasons: (1) The demurrer to the petition should have been sustained because the rule permitting a private citizen to maintain an action against a water company for damages caused

by fire is unsound and the cases announcing that rule should be overruled; (2) the defendant performed the contract obligation by operating efficiently the water system specifically described in the contract; (3) the verdict is flagrantly against the evidence; (4) incompetent evidence was admitted over appellant's objection; (5) erroneous instructions were given by the court.

In Paducah Lumber Company v. Paducah Water Supply Company, 89 Ky. 340, 12 S. W. 554, 13 S. W. 249, 11 Ky. Law Rep. 738, 76 L. R. A. 77, 25 Am. St. Rep. 536, which was decided in 1889, this court first announced the rule that, where a water company has contracted with a city to furnish a supply of water for the protection of property in the city against fire, the company must answer in damages to a citizen for loss from fire resulting from its failure to perform its contract. That rule has been consistently adhered to since the opinion in the Paducah Lumber Company Case was rendered. The following is a list of cases in which the rule has been reaffirmed or tacitly approved. Duncans' Executors v. Owensboro Water Company, 12 S. W. 557, 12 Ky. Law Rep. 35; Duncan's Executors v. Owensboro Water Company, 15 S. W. 523, 12 Ky. Law Rep. 824; Owensboro Water Company v. Duncan's Administratrix, 32 S. W. 478, 17 Ky. Law Rep. 755; Graves County Water & Light Company v. Ligon, 112 Ky. 775, 66 S. W. 725, 726, 23 Ky. Law Rep. 2149; Lexington Hydraulic & Manufacturing Company v. Oots, 119 Ky. 598, 84 S. W. 774, 776, 86 S. W. 684, 27 Ky. Law Rep. 233, 797; Shelbyville Water & Light Company v. McDade, 122 Ky. 639, 92 S. W. 568, 29 Ky. Law Rep. 119; Georgetown Water, Gas, Electric & Power Company v. Neale, 137 Ky. 197, 125 S. W. 293; Kenton Water Company v. Glenn, 141 Ky. 529, 133 S. W. 573; Tobin v. Frankfort Water Company, 158 Ky. 348, 164 S. W. 956; Mountain Water Company v. Davis, 195 Ky. 193, 241 S. W. 801; Harlan Water Company v. Carter, 220 Ky. 493, 295 S. W. 426; Burford & Co. v. Glasgow Water Company, 223 Ky. 54, 2 S. W. (2d) 1027, 62 A.L. R. 1195.

In spite of this array of cases and the length of time during which the rule therein announced has been established, which ordinarily would place beyond the realm of argument the feasibility of changing it, the attorneys for appellant have asked for a reconsideration of this question by the court and earnestly argue

that the rule is unsound and that the cases announcing it should be overruled. In view of the earnestness and ability with which that argument has been presented, the whole court has again considered this question, but has concluded that the rule should not be altered. As pointed out in appellant's brief, the question has been considered by numerous courts, and the great weight of authority supports the rule that a citizen cannot recover from a water company damages for the loss of his property by fire caused by the failure of the water company to comply with a provision in a contract between it and the city whereby it agrees to furnish an adequate supply of water to extinguish fires. The only jurisdictions in which the Kentucky rule has been adopted are North Carolina and Florida. Gorrell v. Greensboro Water Supply Company, 124 N. C. 328, 32 S. E. 720, 46 L. R. A. 513, 70 Am. St. Rep. 598; Mugge v. Tampa Waterworks Company, 52 Fla. 371, 42 So. 81, 6 L. R. A. (N.S.) 1171, 120 Am. St. Rep. 207.

In Graves County Water & Light Company v. Ligon, supra, decided in 1902, the question was reconsidered, and, in refusing to depart from the rule announced in the Paducah Lumber Company Case, the court said:

"It is universally held that the city is not liable to the property owner for the loss of his property. It is equally clear that the city cannot sue the water company and recover damages for the loss of private property. The result is that, if the owner cannot himself sue for the loss of his property, he is without redress, although his property has been destroyed by the breach of a contract made for his benefit by the city. We are not prepared to so hold. The cases above referred to were decided by this court in the year 1889, or two years before the contract now before us was made. The rule thus three times announced by this court was recognized as the law of the state at the time the contract before us was made, and we must presume that the parties to the contract contracted with reference to the law as it had then been declared by this court. To give a different effect now to the words which they used from that which they at the time understood was the legal operation of the contract would be to make for them a contract different from that which they themselves made;

for when they used words which, under the law as it had then been declared, created a certain obligation, it must be presumed that they intended to create this obligation."

Later, in Lexington Hydraulic & Manufacturing Company v. Oots, supra, the question was again reconsidered, and it was there said:

"The first proposition involves the soundness of the principle first enunciated in this state in the case of Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky. 340 (11 Ky. Law Rep. 738), 12 S. W. 554, 13 S. W. 249, 7 L.R.A. 77, 25 Am.St.Rep. 536, that for breach of contracts such as that under consideration the company is liable to the individual property owner for damages by fire resulting from lack of water. At the urgent solicitation of the learned counsel for appellant, we have reconsidered the opinion in that case, and have pondered long on the forceful argument with which he has sought to overthrow the conclusion reached therein, with the result that we have determined that the opinion furnishes a correct exposition of the law on the subject involved, and we therefore adhere to it as authority. It is true, as well said by counsel, a principle ought never to be considered settled until it is settled right; but it is equally true, when settled right, it ought to be adhered to without reference to the number of adjudications in other jurisdictions holding a contrary view."

The contract here in question was entered into in 1912 between the city of Mt. Sterling and the Mt. Sterling Water, Light & Ice Company, or more than 20 years after the rule was announced in the Paducah Lumber Company Case and after that rule had become the firmly established law of this state. The appellant is the successor of the Mt. Sterling Water, Light & Ice Company, and at the time of the fire was operating under the contract entered into in 1912 between the latter company and the city. At the time of the fire the rule in question had been in effect in this state for nearly 40 years, and it must be assumed that water companies during all those years have contracted and operated with that rule in view. It was within the contemplation of the parties at the time the contract was made that the water company would be liable to the citizen for

loss by fire caused by its negligent failure to perform the terms of the contract, and to hold otherwise now would relieve the appellant of a responsibility which it knowingly assumed. The rule stare decisis is not always imperative, but an adherence to it is necessary to preserve uniformity, certainty, and stability in the law. A well-settled principle of law ought not to be overturned unless it is clearly wrong and its evils will be more injurious to the public than can possibly result from a change of the rule. With these principles in view we have re-examined the decisions in this and other jurisdictions, and the arguments and reasoning upon which they rest, and after full consideration have determined to adhere to the former ruling of this court.

The provisions of the contract between appellant and the city which are pertinent to this controversy are contained in the following sections of the franchise:

"Said purchaser shall erect and operate the said water system upon the standpipe system and shall erect and maintain upon a high point in or near the City of Mt. Sterling, Kentucky, a standpipe of not less than Sixteen (16) feet in diameter and one hundred and fifty feet (150) in height and of sufficient capacity to furnish an adequate supply of water for all purposes, public and private, and sufficient pressure for extinguishing fires in any point in said city. Said water system shall be so constructed as to permit of direct pressure from the pumping station on the mains when necessary.

"Said purchaser shall use iron mains, no mains upon which there is a fire hydrant to be less than four (4) inches in diameter and all mains shall be of no less diameter than that fixed by the Hudson Map, which is referred to and made a part of this ordinance, and the location of same shall be determined by said City. (Provided, however, that if the Mt. Sterling Water, Light & Ice Company should become the purchaser of this franchise, then, in that event, the mains as to diameter and location shall remain the same as now).

"Said purchaser shall furnish double nozzzle fire hydrants of first-class approved pattern, with outlets to fit hose of two and a half inches in diameter.

"Said purchaser shall furnish the City of Mt. Sterling, Kentucky, any number of fire hydrants required by said City, for the extinguishment of fires in said city, as described in sections six and seven of this ordinance, the number and location to be fixed by the City Council. (Provided, however, that if the Mt. Sterling Water, Light & Ice Co. should become the purchaser of this franchise, then, in that event, said hydrants both as to number and location, shall remain as they now are.)"

It is the contention of the utilities company that the evidence shows it complied literally with the requirements of the contract that it should erect and maintain a standpipe not less than 16 feet in diameter and 150 feet in height and of sufficient capacity to furnish an adequate supply of water for all purposes, public and private, and sufficient pressure for extinguishing fires at any point in the city and, therefore, that plaintiff's case must fail. The appellant did erect and maintain a standpipe which met the minimum requirements of the contract, and it maintained water mains of the size and character specified therein, and there is no evidence tending to show that the system, if efficiently operated, does not furnish the supply of water and pressure specified in the contract. The narrow question presented by the evidence in this case was whether or not at the time of the fire appellant's equipment was being so operated as to furnish sufficient pressure for extinguishing fires.

Appellant obtains a supply of water from a pool in Slate creek located about five miles from Mt. Sterling. A pumping station is maintained at the source of the supply, and the water is pumped through a rising 10-inch main to a standpipe about one mile from the city. From the standpipe the water is conducted into the city by means of a 12-inch main. A steam pump was maintained at the pumping station until 1921 when a modern electric pump having a capacity of 440 gallons per minute was installed. In 1925 another electric pump was installed in order that one pump would always be available in an emergency. A gauge is maintained at the pumping station which shows the amount of water in the standpipe at any time. When the standpipe is full, the gauge registers a pressure of 180 pounds, and whenever this gauge shows a pressure of less than 170 pounds the employee in charge of the

pumping station starts the pump in operation in order to fill the standpipe. A recording pressure gauge is maintained in the company's office in the city, and this gauge shows the pressure in the water main at that point.

The fire which destroyed appellee's property was discovered shortly after 1:30 p. m. on Sunday, October 7, 1928. The fire department responded promptly to the alarm, and appellant's own witnesses testified that the members of the department fought the fire efficiently after their arrival on the scene. The equipment maintained by the city consisted of an automobile truck and 2,250 feet of hose. The question as to whether or not this equipment was sufficient was submitted to the jury. There is some conflict in the evidence as to how much progress the fire had made when it was first discovered, some witnesses saying that only a small amount of smoke was issuing from the loft in the northeast corner of the barn, while others stated that both fire and smoke were issuing from the barn before the alarm was sounded. It is clear that the fire progressed very rapidly, and it is unlikely that any appreciable amount of the barn or its contents could have been saved regardless of the amount of water available or the promptness and efficiency with which the fire department acted. However, a large number of witnesses testified that, if the usual amount of pressure had been available when the lines of fire hose were attached to the hydrants, the fire could have been extinguished before it reached the sheds and pens.

A number of witnesses testified that, when the hose was attached to the hydrants and the water turned on, an effort was made to throw the water on the fire which was then confined to the loft of the barn, but the water was not thrown with sufficient force to reach the second floor which was 15 to 18 feet from the ground. They described the stream of water as small in flow and weak in force. When thrown against the building from the outside the streams failed to break window panes in the barn. The same witnesses stated that, on other occasions when they had been present and seen the fire fighting equipment in operation, the pressure had been sufficient to throw streams of water vertically a distance of 75 to 100 feet. Henry Daniel, who was appellant's employee in charge of its pumping station on Slate

creek, testified that it was his custom to start the electric pump when the pressure gauge at the station showed less than 170 pounds and that between 1 and 2 o'clock on the afternoon of the fire he looked at the gauge and observed that it registered between 160 and 165 pounds. He was preparing to start the pump to fill the standpipe when he received a telephone message from some one informing him of the fire and directing him to start pumping. He did not know how much water was in the standpipe when the gauge at the pumping station registered 160 pounds. Two witnesses who had a conversation with him a few days before the trial testified that he then told them he did not examine the gauge before he started the pump and did not know what it registered.

Appellant introduced in evidence a paper dial which had been placed in the recording pressure gauge located in its office in the city at 6 o'clock in the evening of October 6, and removed at 6 o'clock on the evening of October 7. The recording pressure gauge records on the paper dial the pressure in the mains at the point where the gauge is located. The dial introduced in evidence showed that the pressure, about the time the fire was discovered, was 73 pounds. It showed violent oscillations immediately thereafter which, as explained by witnesses for appellant, were caused when the lines of hose were attached to the hydrants. During the first hour after the fire started, the pressure as shown by this dial was never lower than 50 pounds. There is evidence tending to show that a pressure of 45 to 55 pounds is sufficient for fire fighting purposes. The firemen who were present at the fire and handled the equipment testified that the streams of water available at the fire were good fire fighting streams, and that the pressure was equal to that obtained at other fires.

It is argued that this evidence conclusively establishes the fact that appellant complied with its contractual obligations, and that the evidence introduced by appellee, if competent at all, is of such little probative value that it is not sufficient to sustain the verdict. With this contention we are unable to agree. Numerous witnesses testified to facts which, if true, showed that the pressure at the point where the fire occurred was low and not sufficient for the purpose of extinguishing fires. There was evidence from which the jury might reasonably infer that, if an adequate supply of

water had been available, the fire could have been extinguished. There was evidence tending to show that the water in the standpipe was low, and that at least several minutes elapsed before the pump was started and direct pressure applied on the mains. Lack of an adequate supply of water during the early stages of a fire will frequently permit the fire to get beyond control.

Appellant complains of the admission of evidence as to the usual pressure and flow of water at other fires. A number of witnesses described the streams of water they had seen at other fires. It also was shown that these fires occurred at points in the city having a higher elevation than Locust street where appellee's property was located. Locust street where it is intersected by Wilson alley is at substantially the lowest point in the city and the pressure there necessarily is greater than in other sections of the city. The plaintiff was required to establish as a fact the lack of pressure in the mains and at the hydrants which were used during this fire. Before it could recover it was necessary for it to show that the pressure on that occasion was insufficient for extinguishing fires and not such as the water system would afford when efficiently operated. The witnesses described the streams of water and then stated the distance water was usually thrown from fire hose in other sections of the city where the pressure was less on account of the higher elevation. These facts were evidential of the ground of recovery provided in the contract, i. e., failure of the company to furnish sufficient water pressure. The witnesses based their opinions as to what the usual pressure was on what they had observed on other occasions when the system was efficiently operated. It was competent for these witnesses to testify as to what the usual pressure was, and that, if the usual pressure had been furnished, the fire could have been extinguished. Paducah Water Supply Company v. Paducah Lumber Company, 14 Ky. Law Rep. 141; Shelbyville Water & Light Company v. McDade, 122 Ky. 639, 92 S. W. 568, 29 Ky. Law Rep. 119.

Appellant also complains of certain evidence introduced to prove the value of the property destroyed by the fire. Practically all of the witnesses fixed the value of the entire property immediately before the fire at $40,000 and the value of the real estate immediately after the fire at $8,000. On cross-examination, the wit-

ness, Steve Pieratt, stated that one consideration which influenced his opinion of the value was that the plaintiff. was conducting a profitable business. Perhaps one or two other witnesses made a similar statement on cross-examination. Each of them, however, stated emphatically that in his opinion the lot and improvements were worth $40,000 immediately before the fire and would have sold for that amount; that immediately after the fire the lot had a value of $8,000 and was sold for that amount. Under the evidence as a whole and the instruction given on the measure of damages, the jury could not have been misled into the belief that it was authorized to assess damages for the loss of plaintiff's business.

The only instruction criticized is instruction No. 1, in which the court told the jury that, if they believed from the evidence that appellant on the occasion in question failed to furnish an adequate supply of water and sufficient pressure for extinguishing fires within the city of Mt. Sterling, and that because of such failure, if any there was, the plaintiff's property was destroyed by fire, they should find for the plaintiff. It is argued that in this instruction the court in effect told the jury that appellant made an unlimited and unqualified agreement to furnish water of adequate volume and sufficient pressure to extinguish fires under any and all conditions, but we do not think it is susceptible of such construction. The contract fixes appellant's obligation and the instruction follows the language of the contract. Under this instruction the jury would not be justified in concluding that appellant's system should have been of a capacity greater than the capacity of the system specified in the franchise, but they could only conclude that it was the duty of appellant to operate the existing system efficiently and thus to furnish the usual and customary pressure which was sufficient for extinguishing fires. The concluding part of instruction No. 1 reads:

"However, should the jury find from the evidence that the defendant did furnish water of the quantity and pressure described and/ or the city of Mt. Sterling had not sufficient equipment and firemen for utilizing said water supply and pressure in extinguishing said fire, they should find for the defendant."

This part of the instruction is criticized because it does not tell the jury that it was the duty of the city to have the equipment taken to the scene of the fire and placed in operation, to have firemen of skill and experience, and that no liability attached to appellant if the firemen failed to fight the fire with skill and diligence. Ordinarily it is proper to set out in the instructions the duty of the city with reference to maintaining sufficient fire fighting equipment and with reference to the efficiency of the firemen and the methods employed by them. In this case appellant's own evidence showed that the equipment was taken to the scene of the fire and placed in operation promptly; that the firemen worked in an efficient and skillful manner and did all that could have been done with the equipment at their disposal. The question as to whether or not the city had sufficient equipment and firemen was submitted to the jury, and this was the only question in regard to the city's duties and the manner in which those duties were performed about which there was any dispute in the evidence.

Judgment affirmed.