Reynolds, J.
'This is the case of D. C. Chubb, administrator of the estate of Myron E. Raymond, deceased, plaintiff, v. Lucius G. Patchin and Florence E. Patchin, defendants.
The plaintiff for his cause of action says there is due him from the defendants the sum of $4,372.82 upon a promissory note,' a copy of which is as follows:
*339 “Middleeiedd, Ohio, April 29tli,’ 1891.
‘ ‘ On or before" four years after date we promise to pay to the order of M. E. Raymond $1,300. Value received. With 6 per cent, interest, payable annually.
“(Signed.) Lucius O. Patchin,
“Florence E. Patchin.”
The following endorsements appear on the back of said note:
“$125, May 1st, 1899, received $125, Feb. 12th, 1912, received $125.”
Plaintiff for his second cause of action says that the defendants executed and delivered to Myron E. Raymond, deceased, their mortgage deed conveying about forty acres of land as security for the payment of the note herein sued upon.
Plaintiff further .claims that said conditions set forth in the mortgage deed have 'been broken.
The defendants answer and .admit the execution by them of the note and mortgage set forth in the plaintiff’s petition; admit that said mortgage was recorded as alleged by plaintiff; admit that the endorsements mentioned in the plaintiff’s petition appear on the back of said note; admit that a certain amount is still due, owing, and unpaid upon said note; and admit that the condition of said mortgage has been broken.
The defendants further answering claim that there have been payments made upon said note to the .administrator’s decedent in his lifetime, that they were not endorsed upon the note and that on account of said payments alleged to have been made by the defendants upon this note, there is now due and unpaid upon this note the sum of $2,401.59, only.
The only dispute between the parties to this action is upon the .amount due upon the note in question and the court will first determine the number and the amount of payments made upon the note, and also, the amount of the payments, if any, that were made upon the note by the defendants to Myron E. Raymond in his lifetime and were not endorsed upon the note as claimed by the defendants.
'The first payment made upon the note, as disclosed by the endorsement thereon, was made May 1st, 1899, $125. It is disclosed by the evidence in this case that this amount of $125 was *340 the purchase price of a horse sold by the defendant Lucius Patchin to Myron Raymond. The next endorsement appearing upon the note bears date of February 11th, 1912, for $125.
It is clearly established by the evidence before the court that this $.125 endorsement' was the purchase price of hay sold by the defendant Lucius Patchin to Myron E. Raymond. It is also clearly established by the evidence that the decedent, Raymond, at the time of the purchase of this hay from the defendant Patchin paid Patchin the sum of $50 upon the purchase price of said hay, and the agreement between the parties was that the balance of the purchase price, to-wit, $75, should be endorsed upon the note.
It is perfectly apparent that Mr. Raymond in making the endorsement upon the note on account of the transaction of hay endorsed the full amount of the purchase price of the hay, $125, when he should only have endorsed $75 upon the note as that was the balance of'the purchase price of the hay. The court is perfectly satisfied that the old gentleman Raymond made a mistake in this respect and gave the defendants credit for $50 more than they were entitled to receive by reason of the transaction of the hay.
It is further established by the evidence in this case that the decedent Raymond purchased two thousand feet of lumber from the defendant Lucius Patchin for which Patchin was entitled to credit upon the note in question. It appears from the evidence that this lumber was sold by Patchin to Raymond in about January, 1900, and the value of the lumber as determined by the court from the evidence with respect to value which has been offered in this case, the court determines the value of the lumber to be $.19 per thousand feet, therefore, the defendants are entitled to $38 credit on account of lumber in January, 1900, on this note in question.
It further, appears from the evidence before the court that the decedent Raymond purchased four tons of hay from the defendant Lucius Patchin in the year 1913, on or about the month of July thereof. The purchase price of said hay agreed upon was the sum of $17 per ton, and there being four tons the total price thereof was $68.
It has been clearly established by the evidence that the decedent Raymond agreed to give the defendant Patchin credit *341 upon this note for the sum of the hay thus purchased by him from Patchin and the defendants are entitled to have said amount of $68 endorsed upon the note in question.
These two items of lumber and hay taken in connection with the two endorsements upon the note as they have been by the court corrected, make the total payment on the note of $306.
It is further claimed by the defendant Patchin that he paid certain sums of money to the decedent Raymond in his lifetime upon the note in question and for which the decedent failed to credit upon said note. There has been some evidence introduced -by very reputable men, residents of this county, tending to establish payments made by the defendant Lucius Patchin to the decedent Raymond during his lifetime, but the evidence is so meagre and so vague as to amounts that the court is unable to determine from the evidence whether or no there was any amount actually paid by the defendant Lucius Patchin to the decedent Raymond in his lifetime to be endorsed upon the note in question. As to this phase of the case the court finds in favor of the plaintiff, and now, we come to ascertain the rule of law governing the computation of interest upon notes of this character.
'This note in question is dated April 29th, 1891, and reads, On or before four years after date we promise to pay to the order of M. E. Raymond, $1,300. Value received, with 6 per cent, interest, payable annually.”
It appears from the face of the note that it became due and payable on the 29th day of April, 1895, consequently, it is more than twenty-two years past due. And it further appears that no payments were made upon said note until after its maturity, the first payment being made May 1st, 1899, of $125, and this is the payment that kept this note alive and kept it from being barred by the fifteen year statute of limitations.
It is very strongly urged by counsel for defendants, and he has cited a number of authorities in this state in support of his contention, which is in substance this: that the note is barred by the common law presumption of payment on account of a lapse of more than twenty years. Their contention is that those installments of interest which were due and payable by the terms of the note more than twenty years ago are now barred by the common law presumption of payment.
*342 We have given this contention very close study and have spent considerable time in examining all authorities in this state upon that subject. While the common law presumption of payment on account of the lapse of more than twenty years is available in Ohio, at the same time we have a statute in Ohio that works a bar in fifteen years.
It can not be successfully contended that the note is barred under the fifteen year statute of limitations because the endorsement made on the first of May, 1899, clearly keeps the note in force and effect, and now can it be said that because the payments of interest that were due and payable under the terms and conditions of the note more than twenty years ago and which have not been paid are now barred by the common law presumption of payment on account of the lapse of more than twenty years?
The note and the interest are all under one contract, and the interest is an increment of the note and it is a part of the note and to hold that the payments of interest were barred by the common law presumption would be dividing this note into two separate contracts, one for the principal, and the otheE for the interest due upon the principal, ,and in effect it would be holding that the note was in full force and effect as to principal and barred by the common law presumption of payment with respect to interest thereon, and the holding of the court is against the defendants on that proposition.
Now, coming to the rule of law as to the computing of interest on this note with the endorsements contained thereon, together with the several sums that the court has heretofore found should be endorsed thereon.
The plaintiff’s claim is, that this being an annual interest note the interest to be paid annually, and in default of the payment of interest annually as expressed in the note, that the interest should be computed on the note with the annual rests. To this proposition the defendants have made no contention, but, as it is the duty of the court to determine the correct amount due upon the note we think this subject will bear serious investigation.
The law of Ohio in relation to interest is found in the three following sections. Section 8303, General Code of Ohio, provides :
*343 ‘ ‘ The parties to a bond, bill, promissory note, or other instrument of writing for the forbearance or payment of money at any future time, may stipulate therein for the payment of interest upon the amount thereof at any rate not exceeding 8 per cent, per annum, payable annually.” (Old section of our Revised Statutes was Section 3179.)
Section 8304, General Code:
“Upon all judgments, decrees, or orders rendered, on any bond, 'bill, note, or other instrument of writing containing stipulations for the payment of interest in accordance with the provisions of the next, preceding section, interest shall be computed till payment at the rate specified in such instrument.” (Old section of our Revised Statutes, Section 3180.)
Section 8305, General Code:
“In cases other than those provided for in the next two preceding sections, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account or settlement between parties, upon all verbal contracts entered into and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of a contract or transaction, a creditor shall be entitled to interest at the rate of 6 per cent, per annum, and no more.”
The question here presented is, did installments of interest become due after maturity so as to draw interest, or in other words, should the interest on this note after maturity be computed with annual rests ?
In Cook v. Courtwright, 40 O. S., 248, the Supreme Court seems unable to give any effect to the words, “Payable ^ annually,” found at the close of Section 8303, General Code, and seems to hold that no effect can be given to these words, and in Ohio College of Dental Surgery v. Rosenthal, 45 O. S., 183-191, the 'Supreme Court says, “It is well settled that our statutes relating to interest were intended to fix the rate and not the time of payment.” So far as we have been able to find the question at bar has never been directly determined by the Supreme Court of this state.
There is no stipulation in these notes in relation to interest after they become due. The defendant is therefore entitled to interest after that time by operation of law and not by any provisions in the notes themselves, citing the case of Brewster *344 v. Wakefield, 22 How. (U. S.), 118-127; In re Bartenback, 2d Fed., 956, and in Averill Coal & Oil Co. v. Werner, 22 O. S., 372, the Supreme Court holds that computing interest with annual rests, without express contract therefor, is not sanctioned by the laws of this state, although it may be the mercantile method.
Do the sections of the code above referred to provide for the computation of interest on these notes after maturity with annual rests? We think clearly'not. Section 8304, G-. C., provides, “That upon judgments and decrees rendered on ,any bond, note,” etc., interest shall be computed- till payment, at the rate specified in such instrument. Not expressly providing that the rate on such bond or note shall be the same after maturity of the note as before. In the ease of Hunter v. Hall, 14 C. C., 425 (6 O. C. D., 366), the court gives this construction of the statutes. We find no conflict of the authorities on this question. The general principle is laid down in 22 Cye., page 1483, and some authorities are cited although they are not numerous. One of the leading cases is Wheaton v. Pike, 9 R. I., 132, the syllabus of which is as follows:
“Where a promissory note is made payable at any time given after date, with interest payable semi-annually, interest may be computed in making up the judgment on all installments of interest overdue and remaining unpaid, but no installments of semi-annual interest will be. considered as due after the maturity of the note because after that both the accruing interest and the principal are due not on any particular day but every day till they are paid.”
Our Supreme Court in Marietta Iron Works v. Lottimer, 25 O. S., 621, holds that inasmuch as the statute provided that upon all judgments on such notes interest should be computed till payment at the rate specified in the note, the inference is irresistible that the note after maturity and before judgment must bear a stipulated rate; thus so construing the statute as to uphold that notes shall bear the stipulated rate of interest after maturity. Such rate is not usurious but by virtue of the same provisions of the statute the Supreme Court in this same case held that while the judgment would bear the rate of interest stipulated in the contract, the interest could not be made pay *345 able quarterly until paid although such payments were also stipulated in the contract, holding that the judgment only drew interest by operation of law, and that in the absence of statutory provisions on the subject the interest on the judgment could not be computed with quarterly rests.
The holding in this ease would seem by its reasoning to be conclusive of the question before us, there being no statutory provisions for computing interest on notes after their maturity with annual rests.
And in the case of Magnester v. DeHavens, 52 S. W., 795, by the Supreme Court of Kentucky, 1899, the syllabus is as follows:
“A stipulation in a note for payment of interest semi-annually extends only to the maturity of the note, and after that interest must be computed in the ordinary way.”
To the same effect is Havey v. Edmison, 22 N. W., 594. In this case the Supreme Court of Dakota reviewed many authorities on questions of computing interest. Judge Longyear of the United States District Court of Michigan holds the same rule under the Michigan statutes which he quoted and which is quite similar to the Ohio Statute so far as this question is concerned. In his opinion he says:
“The interest up to the maturity of the debt had been paid, and the only interest in question here is such as had accrued after that time by operation of law and not by any provision of a contract. It was therefore not due by installments but, it was due at any and all times as it accrued.”
The Supreme Court of New Hampshire in the case of Ashuelon Railway Co. v. Elliott, 57 N. H., 397, holds that interest after maturity and recoverable by way of damages for the detention of money should be computed without semi-annual or other rests.
Hall v. Scott, 13 S. W., 249, decided by the Supreme Court of Kentucky, 1890, confirms the same rule as to computing interest. We also call attention to the case of Ingram v. Scattergood, 15 C.C.(N.S.), page 93. This is a well considered ease, and many of the authorities which we have cited are very ably and thoroughly discussed in the opinion of the circuit *346 court in these cases. We have not been able to find any authorities holding a different rule.
While we are aware that the commonly accepted merchantile method in computing interest upon notes of this character is to compute it with annual rests without respect to whether the note is due, or not due. While this method is the common practice, it is not the law in Ohio. Notes of this character when computed by the commonly accepted mercantile method are liable to consume everything above ground and then eat down through sub-soil to the trenton rock itself.
We are, therefore, constrained to hold that the plaintiff is entitled to have the interest on this note computed after maturity at the rate specified therein, 6 per cent., without annual rests, and computing the note upon this basis we find to be due thereon, upon the 24th day of September, 1917, which was 'the first day of this term of the court, the sum of $3,081.50, and the plaintiff is entitled to judgment for this amount and a decree for foreclosure and sale of the premises described in the plaintiff’s petition is hereby rendered.